# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
## EASTERN DIVISION

| | |
|---|---|
| WILLIAM SAVEH D/B/A OLYMPIC STEAKHOUSE,<br><br>  Plaintiff,<br><br>  v.<br><br>WESTERN WORLD INSURANCE COMPANY,<br><br>  Defendant. | Case Nos: 1:21-cv-02373-JDB-jay<br>     1:23-cv-02191-JDB-jay |

## RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO SET REASONABLE UMPIRE FEE FOR COURT APPOINTED APPRAISAL UMPIRE TOBY JOHNSON AND REQUEST FOR ATTORNEYS' FEES

Comes now Court Appointed Appraisal Umpire Toby Johnson d/b/a Omega Insurance Appraisals, by and through undersigned counsel, pursuant to the authority granted in the Appraisal Clause contained in Defendant Western World Insurance Company Policy Number NPP8664937, and this Honorable Court's Order at D.E. 6-1 at PageID #139, 85-2 at PageID #829, and submits this Response in Opposition to Plaintiff's Motion to Set Reasonable Umpire Fee for Court Appointed Appraisal Umpire Toby Johnson (D.E. 111.)

## BACKGROUND

**A. The Policy.**

On March 13, 2020, it appears undisputed Western World Insurance Company ("Western World") issued an insurance policy to Olympic Steakhouse ("Plaintiff") with respect to a commercial building located at 5711 Hwy 412, Bells, Tennessee 38006 ("the Property") bearing Policy No. NPP8664937 with a policy period of March 13, 2020 to March 13, 2021 (the "Policy"). (D.E. 6-1 at PageID #76, 85-2 at PageID #766.) The Policy included specific and unambiguous terms, exclusions, limitations, definitions, and conditions. (*See id*.) The Policy provides the following relevant language:

2. **Appraisal**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and
**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

(D.E. 6-1 at PageID #139, 85-2 at PageID #829.)

**B.  The Lawsuits.**

On April 14, 2021, Plaintiff filed a lawsuit in the Circuit Court for Crockett County, Tennessee at Alamo, identified as Case No. 3585, asserting a breach of contract action against Defendant related to a wind and hail event at the Property that was removed to this Court on June 4, 2021 and identified as Case 1:21-cv-02373. (D.E. 1.) On February 23, 2023, Plaintiff filed a Complaint in the Circuit Court for Crockett County, Tennessee at Alamo, identified as Case Number 10852, against Defendant alleging breach of contract related to loss or damage to the Property from an ice storm. Defendant removed the February 23, 2023 case to this Court on April 3, 2023. On November 17, 2023, Plaintiff filed a Motion to Vacate Appraisal. (D.E. 69.) Also on November 17, 2023, Defendant filed a motion to consolidate Case 1:21-cv-02373 and Case 1:23-cv-02191. (D.E. 71.) On February 8, 2024, this Honorable Court entered an Order consolidating the cases. (D.E. 77.) On March 28, 2024, this Honorable Court partially granted Plaintiff's Motion to Amend Complaint to amend the name of Plaintiff. (D.E. 84.)

On May 28, 2024, this Honorable Court vacated an appraisal award in this lawsuit and ordered the parties to undergo appraisal, to select an umpire within thirty (30) days of the May 28,

2024 Order, and for the appraisers to state separately the value of the property and amount of loss. (DE 91). On September 20, 2024, Plaintiff filed a Motion to Appoint Appraisal Umpire and Request for Order Compelling Appraisal in Case Number 1:23-cv-02191-JDB-jay alleging the parties were unable to agree on an umpire. (D.E. 100.) However, the Parties' appraisers agreed to Toby Johnson as a neutral umpire for the appraisal process between July 30, 2024 and August 16, 2024 until Plaintiff's appraiser backed out of support for Mr. Johnson without explanation. (*See* D.E. 101-1 at PageID #1015 – 17.) On October 17, 2024, this Honorable Court appointed Mr. Toby Johnson ("Mr. Johnson") as the neutral umpire to conduct the appraisals for Case 1:21-cv-02373 and Case 1:23-cv-02191. (D.E. 105.)

C. **The Appraisal Process.**

Nearly eight (8) months ago, on November 12, 2024, Mr. Johnson was contacted by Mr. Ken Abernathy, appraiser for Western World, and advised Mr. Johnson had been appointed by the Honorable Judge Daniel Breen to serve as an umpire for appraisals on two separate claims, one involving hail, wind, and water from May 3, 2020 and a freeze loss from February 21, 2021. Prior to commencing the appraisals, Mr. Johnson provided the anticipated cost for appraisal via email given the scope of the dispute. (Attached hereto as **Exhibit 1** is the affidavit of Mr. Toby Johnson; *see* Ex. 1 at Ex. A.) A week later, on November 19, 2024, Mr. Johnson also advised the appraisers via email the appraisal award would not be released "until the final [umpire's] invoice is paid in full by both parties." (Ex. 1 at Ex. B.) Neither Plaintiff nor Defendant disputed the anticipated cost or rate of Mr. Johnson for both appraisals; indeed, Plaintiff's appraiser advised Mr. Johnson that "[t]he billing does not make any difference to me. (*Id.*)

Mr. Johnson then advised both appraisers on November 27, 2024 of the need for a retainer due to the parties being "$1.7 Million apart" between appraisal positions, and "approximately

3,187 pages of material to consider between both" appraisers. (Ex. 1 at Ex. C.) Mr. Johnson estimated 40 hours of work based on the volume and complexity of the damage documentation and appraisal documents provided from both parties and the fact the appraisal involved two separate insurance claims for distinct perils across multiple commercial buildings. On December 3, 2024, Mr. Johnson received an email from Vince Perri, appraiser for Plaintiff, who advised Mr. Johnson of his available dates for inspection of the Property and further stated, "Toby, I'm good with your retainer and will forward it over." (Ex. 1 at Ex. D.)

Thereafter, on January 22, 2025, Mr. Perri provided Mr. Johnson all expert documentation for Mr. Johnson to consider in the appraisals, and also advised Mr. Johnson that "I will reach out to the attorney regarding the payment of your retainer." (Ex. 1 at Ex. E.) On March 18, 2025, Mr. Perri sent Mr. Johnson an email advising Mr. Johnson that "it's discouraging to see that nothing has been accounted for on the roof, despite clear indications of an issue … Given the extent of what we saw up there, it's a shame that not a single repair or replacement has been accounted for in the award." (Ex. 1 at Ex. F.) Also in the email, Mr. Perri advised that counsel for the policyholder had raised concerns about the amount of the umpire fee months after it was presented to the Plaintiff and now a request for a detailed breakdown of how the charges were calculated was desired. Mr. Johnson's office responded to the email on March 18th referencing Mr. Johnson's emails from November 12, 2024 and November 17, 2024 and provided a detailed explanation of the fee structure and billing. (*Id.*)

On April 10, 2025, Plaintiff emailed Mr. Johnson directly with inquiries regarding the umpire fees. Omega's Chief Operating Officer, Ryan Hysmith, responded to Plaintiff and copied Plaintiff's counsel on the email on the same day and explained the fee structure once more. (Ex. 1 at Ex. G.) On May 27, 2025, Mr. Johnson sent an email to both appraisers and legal counsel for

each party and summarized the procedural history of the appraisals, explained the work performed, detailed the basis for the fees, and clarified why the appraisal panel had not yet concluded the appraisals. (Ex. 1 at Ex. H.)

Lastly, Western World did not dispute Mr. Johnson's umpire fee and promptly issued payment to Mr. Johnson for its half on or about February 28, 2025 in the amount of $9,000.00. (Ex. 1 at Ex. I.) Western World's payment of Mr. Johnson's umpire invoice without dispute demonstrates the reasonableness of Mr. Johnson's umpire fee. Mr. Johnson avers a presumption of reasonableness should arise before this Court regarding the amount of Mr. Johnson's fee for the performance of the appraisal as Defendant did not join in Plaintiff's Motion to Set Reasonable Umpire Fee (or dispute the cost of Mr. Johnson's services before allowing Mr. Johnson to conduct the appraisal) and Plaintiff's own appraiser, Mr. Perri, agreed to pay the same amount via a December 3, 2024 email. (Ex. 1 at Exs. D & I.) Quite simply, one party to the appraisals timely paid Mr. Johnson's invoice and made no dispute as to the amount, basis for fees, or scope of services. Again, Plaintiff is simply dissatisfied with the outcome of appraisal and is looking to save money any way he can, by breaching the terms and provisions of the Policy's appraisal provision at the expense and inequity to Mr. Johnson. Now that Mr. Johnson was induced into performing the appraisal of both claims under the impression his fees and costs were approved and acceptable to both appraisers, Plaintiff does not wish to pay the costs to conduct the appraisal for which the Policy clearly obligates Plaintiff, because it appears Plaintiff is experiencing the equivalent of buyer's remorse – Plaintiff does not like the result of the Appraisal.

## **LEGAL AUTHORITY**

Since this Honorable Court has diversity jurisdiction, federal law applies to procedural issues and Tennessee law applies to substantive legal issues. *Hanna v. Plumer*, 380 U.S. 460, 465, 85 S. Ct. 1136, 14 L. Ed. 2d 8 (1965) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817,

82 L. Ed. 1188 (1938)); *Talley v. State Farm Fire & Cas. Co.,* 223 F.3d 323, 326 (6th Cir. 2000). In contract cases, Tennessee follows *lex loci contractus* meaning "a contract is presumed to be governed by the law of the jurisdiction in which it was executed absent a contrary intent" such as a valid contractual choice-of-law provision. *Se. Texas Inns, Inc. v. Prime Hospitality Corp.*, 462 F.3d 666, 672 (6th Cir. 2006) (applying Tennessee law); *Ohio Cas. Ins. Co. v. Travelers Indem. Co.*, 493 S.W.2d 465, 467 (Tenn. 1973). Under Tennessee law, insurance policies are governed by general principles of contract law. *Christenberry v. Tipton,* 160 S.W.3d 487, 492 (Tenn. 2005). As such, the "policy should be construed as a whole in a reasonable and logical manner, giving the policy's terms, as written, their natural and ordinary meaning." *Spears v. Tenn. Farmers Mut. Ins. Co.,* 300 S.W.3d 671, 679 (Tenn. Ct. App. 2009) (internal citations omitted).

Appraisal provisions do not settle disputes about the scope of coverage because "scope of coverage issues present questions of law." *Merrimack Mut. Fire Ins. Co. v. Batts,* 59 S.W.3d 142, 147 (Tenn. Ct. App. 2001). If the dispute between the parties is about the monetary value of the damage and not about whether particular damage is covered by the policy, then compelling appraisal is appropriate because doing so would be "consistent with the terms of the Policy" and "it will potentially save both party resources and judicial resources." *Clippinger v. State Farm Mut. Auto. Ins. Co.,* No. 2:20-cv-02481-TLP-cgc, 2021 WL 4887984, at *12 (W.D. Tenn. Oct. 19, 2021) (internal quotation omitted). However, if the dispute between the parties is more appropriately described as an issue of whether the given damage is covered by the insurance policy, then the court should deny appraisal. *See Merrimack,* 59 S.W.3d at 153 ("disputed coverage and liability issues are best submitted to the courts before any dispute regarding the amount of loss is submitted to the appraisers.")

In Tennessee, appraisal provisions to insurance policies are valid and may be enforced by courts. *J. Wise Smith and Assocs., Inc. v. Nationwide Mut. Ins. Co.,* 925 F. Supp. 528, 530 (W.D. Tenn. Dec. 5, 1995); *Khushi P'ship v. Berkshire Hathaway Homestate Ins. Co.,* No. 3:22-cv-00265, 2023 WL 186863, at *3 (M.D. Tenn. 2023). A court will not re-write unambiguous terms of a contract "which may be thought harsh and unjust." *Shamrock Homebuilders, Inc. v. Cherokee Ins. Co.*, 466 S.W.2d 204, 242 (Tenn. 1971). "It is the Court's duty to enforce contracts according to their plain terms. In construing a contract, the entire contract should be considered in determining the meaning of any or all its parts." *Cocke Cty. Bd. of Highway Comm'rs v. Newport Utils. Bd.*, 690 S.W.2d 231, 237 (Tenn. 1985) (citations omitted). "Any attempt on the part of either party to misuse or pervert the provisions of the policy as to an appraisal, so as to unreasonably delay an adjustment . . . is a breach of good faith, and should be treated as a waiver of the condition." *See Clippinger,* 2021 WL 4887984, at *11 (citation omitted). Tennessee law on appraisal is primarily provided by *Merrimack* cited above. In 2016, the Tennessee Court of Appeals declared what *Merrimack* stands for in regard to legal principles:

> First, appraisal clauses are not the same as arbitration clauses. Second, appraisers' (and eventually umpires') scope of authority is strictly defined by the contract or other agreement of the parties, and typically that scope is limited to finalizing the valuation of damage. Third, the umpire's determinations with regards to matters within the scope of authority granted to the umpire are binding on the parties and may not be challenged in court where the challenge is only based upon the umpire's determined amount.

*Thomas v. Standard Fire Ins. Co.*, 2016 WL 638559, at *3 (Tenn. Ct. App. 2016). Much like the amount of appraisal is binding on the parties to an appraisal, the umpire fees that were provided to the parties in advance and prior to commencing appraisal are also binding since they were incurred and were within the scope of authority granted by the Policy. *Merrimack* also notes:

> The courts are not at liberty to rewrite an insurance policy solely because they do not favor its terms, and must avoid forced constructions that render a provision

> **ineffective** or **extend a provision beyond its intended scope**. In the absence of fraud, overreaching, or unconscionability, the courts must give effect to a provision in an insurance policy when its terms are clear and its intent certain. (Citations omitted).

*Merrimack*, 59 S.W.3d at 148 (emphasis added). Where there is no ambiguity, it is the duty of the court to apply to the ordinary meaning to the words used and neither party is to be favored in their construction. *Ballard v. North American Life and Cas. Co.,* 667 S.W.2d 79 (Tenn. Ct. App. 1983). The policyholder and insurer's rights "are governed by their contract of insurance." *Merrimack*, 59 S.W.3d at 148. The Policy clearly provides the parties to an appraisal shall share the costs of an appraisal and umpire equally.

A contract entered into with a known agent on behalf of a disclosed principal is normally the contract of the disclosed principal. *Holt v. Am. Progressive Life Ins. Co.*, 731 S.W.2d 923, 925 (Tenn. Ct. App. 1987). An agent acting on behalf of an undisclosed principal assumes liability for the contract entered into. *Anderson v. Durbin*, 740 S.W.2d 417, 418 (Tenn. Ct. App. 1987).

## ARGUMENT

### 1. The Policy's Appraisal Clause.

A copy of the Policy is included in the Court's record at D.E. 6-1 and D.E. 85-2. A cursory review of the Policy's "Appraisal" clause, for which judicial notice may be taken pursuant to Fed. R. Evid. 201, states: "[e]ach party will… [b]ear the other expenses of the appraisal and umpire equally." (D.E. 6-1 at PageID #139, 85-2 at PageID #829.) Further, one appellate court in Michigan opined trial courts do not exceed their authority in ordering parties to pay one-half of the court-appointed umpire's fees simply based on the inclusion of the appraisal provision's requirement for the fees of appraisal and the umpire to be shared equally. *See Davis v. Nat'l Am. Ins. Co.*, 259 N.W.2d 433, 440 (Mich. Ct. App. 1977) ("Finally, we do not believe the trial court exceeds its authority in ordering defendant to pay one-half of the court-appointed Umpire's fees. We need only

note in this regard that the policy of insurance issued plaintiffs by defendant contained the … provision regarding the payment of fees arising out of appraisal proceedings[]").

The Policy is clear, "Each party **will** … bear the expenses of the appraisal and umpire equally." (D.E. 6-1 at PageID #139, 85-2 at PageID #829.) (Emphasis added). Plaintiff does not argue the language is ambiguous, unconscionable, or inapplicable to Plaintiff but simply disagrees, with no basis, as to the amount of the umpire's fee expense. Mr. Johnson and Defendant have incurred the cost of the appraisals, but not Plaintiff because of its refusal to comply with the Policy's provision[1]. Therefore, Mr. Johnson's appraisal fee for both claims should not be reduced and Plaintiff should pay the full amount owed pursuant to the Policy.

### 2. Plaintiff is estopped from refusing to pay the full amount due and owing to Mr. Johnson.

Estoppel is an equitable doctrine arising from the maxim that "no person may take advantage of his or her own wrong." *Redwing v. Cath. Bishop for Diocese of Memphis,* 363 S.W.3d 436, 460 (Tenn. 2012) (citations omitted); *Premo v. United States,* 599 F.3d 540, 547 (6th Cir. 2010) (quoting *Mich. Express, Inc. v. United States,* 374 F.3d 424, 427 (6th Cir. 2004)). To succeed on an equitable-estoppel claim, the party asserting estoppel must show that: (1) "the party to be estopped . . . used conduct or language amounting to a representation of material fact"; (2) "that party [was] aware of the true facts"; (3) "that party . . . had an intention that the representation be acted on, or . . . conducted himself in such a way toward the party asserting estoppel that the latter had a right to believe that the former's conduct was so intended"; and (4) "the party asserting estoppel . . . detrimentally and justifiably relied on the representation." *Thomas v. Miller,* 489 F.3d 293, 302 (6th Cir. 2007). Thus, "[t]he doctrine of equitable estoppel applies only when the

---

[1] On February 28, 2025, Western World issued payment of $9,000.00 via check # 365889 to Mr. Johnson for one-half of Mr. Johnson's umpire fee of $18,000.00, without dispute or objection. (*See* Ex. I to Mr. Johnson's Declaration.)

[defending party] engages in misconduct." *Redwing,* 363 S.W.3d at 460 (citing *B & B Enters. Of Wilson Cnty., LLC v. City of Lebanon,* 318 S.W.3d 839, 849 (Tenn. 2010)). For this reason, "[t]he focus of an equitable estoppel inquiry 'is on the defendant's conduct and the reasonableness of the plaintiff's reliance on that conduct.'" *Id.* (quoting *Hardcastle v. Harris,* 170 S.W.3d 67, 85 (Tenn. Ct. App. 2004)). The party invoking the doctrine bears the burden of proof. *Hardcastle,* 170 S.W.3d at 85.

Promissory estoppel "is an equitable doctrine, and its limits are defined by equity and reason." *Chavez v. Broadway Elec. Serv. Corp.*, 245 S.W.3d 398, 404 (Tenn. Ct. App. 2007). Promissory estoppel is based on "a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Calabro v. Calabro,* 15 S.W.3d 873, 878 (Tenn. Ct. App. 1999). In order to prevail on a claim of promissory estoppel, plaintiffs must establish the following elements: " '(1) that a promise was made; (2) that the promise was unambiguous and not unenforceably vague; and (3) that they reasonably relied upon the promise to their detriment.' " *Jones v. BAC Home Loans Servicing, LP*, No. W2016-00717-COA-R3-CV, 2017 WL 2972218, at *9 (Tenn. Ct. App. July 12, 2017) (quoting *Chavez*, 245 S.W.3d at 404). "The doctrine of promissory estoppel is also referred to as 'detrimental reliance' because the plaintiff must show not only that a promise was made, but also that the plaintiff reasonably relied on the promise to his detriment. *Calabro*, 15 S.W.3d 873 at 879.

In this case, Mr. Johnson gave notice of the costs of the appraisals to Plaintiff on November 12, 2024, before commencing work. (Ex. 1 at Ex. A.) In the email communication to Plaintiff's appraiser and Defendant's appraiser, Mr. Johnson outlined his billing structure, including the

requirement for a retainer payment and an explanation of how time would be tracked and billed for the appraisal. (*Id.*) Plaintiff did not dispute any of the information, costs, rates, or timeline for appraisal as presented by Mr. Johnson in the November 12, 2024 email. (Ex. 1 at Ex. B.) In fact, the Plaintiff and Defendant's appraisers elected Mr. Johnson's hourly rate option in regards to the cost of the appraisal. (Ex. 1 at Ex. C.) On November 27, 2024, Mr. Johnson issued a retainer invoice to Plaintiff and Defendant's appraisers estimating forty (40) hours of work to be performed on the appraisal based on the volume and complexity of the materials provided. The appraisal file materials included over 3,000 pages of documentation, reflected a valuation gap of more than $1.7 million, and involved two separate claims for distinct perils across multiple buildings. (Ex. 1 at ¶ 14.)

Based on the above, Plaintiff purposely and intentionally did not prevent or stop Mr. Johnson from performing work on the appraisal after his costs were fully disclosed and selected by the appraisers. Plaintiff allowed Mr. Johnson to perform his services and confer a benefit to Plaintiff for which Plaintiff seeks to avoid payment after having full knowledge of the cost of the benefit. Mr. Johnson relied on the silence and refusal to dispute the cost of the appraisal by Plaintiff and the circumstances of the Court appointment to complete the appraisal once it was clear the parties to the appraisal did not dispute the cost of Mr. Johnson's services. Therefore, Plaintiff is bound by the actions and statements of its representative in the appraisal – its's appraiser. Plaintiff is estopped from refusing to pay one-half the umpire fee.

### 3. The Court should recognize the existence of a contract between Plaintiff, Defendant, and Mr. Johnson.

A contract "must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon a sufficient consideration, free from fraud or undue influence, not against public policy and sufficiently definite to be enforced." *Doe v. HCA Health Services of*

*Tennessee,* Inc., 46 S.W.3d 191, 196 (Tenn. 2001); *Higgins v. Oil, Chem., and Atomic Workers Int'l Union, Local #3-677*, 811 S.W.2d 875, 879 (Tenn. 1991) (quoting *Johnson v. Central Nat'l Ins. Co. of Omaha*, 210 Tenn. 24, 34-35 (Tenn. 1962)). Consider that a leading treatise on contract law provides "[c]ertainty with respect to promises does not have to be apparent from the promise itself, so long as the promise contains a reference to some document, transaction or other extrinsic facts from which its meaning may be made clear." 1 Richard A, Lord, *Williston on Contracts*, section 4:27, at 593 (4th ed. 1990); *Doe*, 46 S.W.3d at 196. Here, a contract was created between Mr. Johnson, Plaintiff, and Defendant, making clear the intent for Mr. Johnson to umpire the Court ordered appraisal in accordance with Mr. Johnson's fee structure and the corresponding promise to pay Mr. Johnson's clearly communicated appraisal fee by not disputing his fee before Plaintiff consciously allowed Mr. Johnson to begin the appraisal.

It is well-established in Tennessee that a contract can be expressed, implied, written or oral, but a valid and enforceable contract must, among other things, result from a meeting of the minds and must be sufficiently definite to be enforced. *Ziyad v. Estate of William B. Tanner, Sr.*, No. W2007-01683-COA-R3-CV, at 8 (Tenn. Ct. App. 2008). "A contract must be of sufficient explicitness so that a court can perceive what are the respective obligations of the parties." *Id* at 8. (Quotation omitted). Two of the leading treatises on contract law provide additional authority concerning the requirement of definite contractual terms. "Certainty with respect to promises does not have to be apparent from the promise itself, so long as the promise contains a reference to some document, transaction or other extrinsic facts from which its meaning may be made clear." 1 Richard A. Lord, *Williston on Contracts,* § 4:27, at 593 (4th ed. 1990).

In this case, Mr. Johnson was appointed by the Court to serve as the umpire for the appraisal process. (D.E. 105.) Mr. Johnson provided his fee arrangement for the appraisal process to Plaintiff

and Defendant via email before any work was performed on the appraisal. (Ex. 1 at Ex. A.) Mr. Johnson then notified Plaintiff and Defendant's appraisers via email the appraisal award would not be released "until the final [umpire's] invoice is paid in full by both parties" and neither appraiser disputed this requirement before Mr. Johnson performed any work or services on the appraisal. (Ex. 1 at Ex. B.) Mr. Johnson advised Plaintiff and Defendant's appraisers on that he would require a retainer fee due to a damages difference of "$1.7 Million" and "3,187 pages of material to consider" before performing any work on the appraisal. (Ex. 1 at Ex. C.) The Plaintiff's appraiser emailed Mr. Johnson on December 3, 2024 and said "Toby, I'm good with your retainer and will forward it over." (Ex. 1 at Ex. D.) On January 22, 2025, Plaintiff's appraiser emailed Mr. Johnson all expert documentation for Mr. Johnson to consider in the appraisal, and stated in the email "I will reach out to the attorney regarding the payment of your retainer." (Ex. 1 at Ex. E.) Thereafter, on January 23, 2025, Mr. Johnson relied upon Mr. Perri's statements and conduct and began working on the appraisal and the appraisers and Mr. Johnson held a conference call to discuss preparations for the upcoming site inspection that was eventually conducted on January 31, 2025. (Ex. 1 at ¶¶ 19 – 27.) Therefore, Mr. Johnson detrimentally relied upon Mr. Perri's conduct and statements and commenced his work as the umpire for the appraisal.

Thus, from the sequence of events between Mr. Johnson, Plaintiff's appraiser and Defendant's appraiser, the parties acted as if a contract existed and now that the appraisal has been performed and a potential result can be gleaned, Plaintiff is not pleased with the end result of the appraisal after demanding the same in both lawsuits. Plaintiff understands he must attempt to reduce the umpire's fee by casting doubt on the reasonableness of the umpire's fee since its widely recognized in Tennessee that "a court will generally not interfere with an appraisal award or substitute its own judgment for that of the appraisers absent fraud, mistake, or misfeasance."

*Trotter v. State Farm Fire & Cas. Co., Inc.*, No. 3:05-CV-396, 2008 WL 11342581, at *3 (E.D. Tenn. May 6, 2008) (citing *Lakewood Mfg. Co. v. Home Ins. Co.*, 422 F.2d 796, 798 (6th Cir. 1970)). Since Mr. Johnson was appointed by the Court, no objections were lodged against Mr. Johnson, Mr. Johnson's fee structure, or conditions to performing the appraisal, Mr. Johnson is entitled to his full fee as previously disclosed. In fact, Mr. Johnson made available all information pertaining to the appraisal prior to performing any work on the appraisal. Plaintiff's appraiser never disputed Mr. Johnson's fee, or the requirement for Mr. Johnson's invoice to be paid prior to the release of the appraisal award. A contract or agreement exists between Mr. Johnson, Plaintiff, and Defendant and Plaintiff has not performed his end of the agreement and paid Mr. Johnson for his services.

**4. Alternatively, the Court should recognize the existence of a contract implied in fact.**

In the alternative, this Honorable Court should find there exists a contract implied in fact between Mr. Johnson, Plaintiff, and Defendant. Tennessee "recognizes two distinct types of implied contracts; namely, contracts implied in fact and contracts implied in law, commonly referred to as quasi contracts." *Paschall's Inc. v. Dozier*, 219 Tenn. 45, 53-54 (Tenn. 1966). An implied in fact contract is inferred from the conduct of the parties; it is not necessarily expressed in words. *V.L. Nicholson Company v. Transcon Investment and Financial Ltd., Inc.*, 595 S.W.2d 474, 482 (Tenn. 1980). In *Cotton v. Estate of Roberts*, the Court held:

> In order to make out an implied contract for the rendition of services, facts and circumstances must be shown which amount to a request for services, which the is the offer to contact, and the performance of the requested services, which is the acceptance of the offer ... the request or offer need not be stated in words. Any conduct from which a reasonable person in the offeree's position would be justified in inferring a promise in return for the requested act, amounts to any offer. In the absence of facts and circumstances amounting to such a request, a contract may yet be implied when the facts and circumstances show that the person receiving the benefit of such work or services knew, or reasonably should have known, that the

person doing the work expected to be paid and that the services were performed and accepted on this basis.

337 S.W.2d 776, 779 (Tenn. Ct. App. 1960).

In this case, Mr. Johnson performed the appraisal after being appointed by the Court, provided notice to Plaintiff and Defendant of his fees for the performance of the appraisal before commencing any work, received no objection to his scope of services or fee structure (indeed, Plaintiff's appraiser agreed to the fee structure), and advised the parties to the appraisal that his appraisal award would not be released until payment for his services was provided. (Ex. 1 at ¶ 11; Ex. 1. At Ex. B.) Mr. Johnson was sought out, Mr. Johnson provided notice of the conditions of his service, and no party to appraisal disputed or objected to Mr. Johnson's scope of services, fees, or the process. Mr. Johnson has performed his end of the bargain, been compensated with no dispute or objection by Defendant, but Plaintiff has not paid for the valuable services rendered by Mr. Johnson, because it is unhappy with the result. The elements of an implied in fact contract as described in *Cotton* exist in this case and an obligation is imposed upon Plaintiff to pay Mr. Johnson for all of his fees for conducting appraisal. *Cotton*, 337 S.W.2d at 779.

**5.** **Mr. Johnson should be awarded his attorneys' fees and costs for recovering his Court appointed umpire fees for carrying out the duties under which he was granted authority under the Policy and because the refusal to comply with the appraisal provision is a breach of the Policy.**

The Policy's appraisal provisions provides **"**Each party will … Bear the other expenses of the appraisal and umpire equally." (D.E. 6-1 at PageID #139, 85-2 at PageID #829.) To date, Mr. Johnson has not received any payment from Plaintiff and instead, has been served with a meritless Motion to reduce his previously disclosed and reasonable appraisal fee for which he was appointed by this Court. Thus, Plaintiff is in breach of the Policy provisions regarding the expense of appraisal. Not only has Plaintiff breached the Policy's appraisal provisions and refused to "bear the other expenses of the

appraisal and umpire equally," Plaintiff has forced Mr. Johnson to secure counsel to defend his rights in this matter, and to secure payment for Mr. Johnson's unopposed appraisal expenses.

"Tennessee follows the 'American rule' with regard to attorneys' fees, and will not allow such fees to be shifted unless there is an express provision in a contract, statute, or some other equitable ground." *Holcomb v. Cagle*, 277 S.W.3d 393, 398 (Tenn. Ct. App. 2008). Thus, any claims for attorney's fees will not be recoverable in this lawsuit to simply enforce the provisions of the insurance policy, unless the language of the contract expressly allows for attorneys' fees to be recoverable. *See Pinney v. Tarpley,* 686 S.W.2d 574 (Tenn. Ct. App. 1984); *Linden v. American Storage Park,* 1990 WL 6836 (Tenn. Ct. App. Jan. 31, 1990); *Hewgley v. Vivo,* 1997 WL 92077 (Tenn. Ct. App. Mar. 5, 1997). On November 27, 2024, Mr. Johnson issued an invoice to Plaintiff in the amount of one-half the retainer amount for the appraisal, $9,900.00. (Ex. 1 at Ex. C.) ("Omega Invoice 24038 – Olympic Steak & Pizza ~ Western World Insurance.pdf;")

Plaintiff's appraiser communicated acceptance of Mr. Johnson's fee arrangement and then allowed Mr. Johnson to incur the expense and perform the appraisals, only for Plaintiff to now complain of the unreasonableness of Mr. Johnson's fee after Mr. Johnson completed his work. The Policy provides recovery of Mr. Johnson's attorneys' fees in this case as the Policy provides in part the parties to appraisal will "[b]ear the other expenses of the appraisal and umpire]" which Mr. Johnson avers includes his fees for having to respond to Plaintiff's meritless motion. Given the weight of evidence and equitable considerations that clearly demonstrate Plaintiff was provided prior notice of the expense of appraisal, and Plaintiff's appraiser agreed to pay the umpire his communicated retainer of $9,000 for Plaintiff, the Policy's unambiguous language regarding the sharing of appraisal costs means Mr. Johnson should be awarded his attorney's fees and costs for securing one-half of his appraisal fee and the expenses he has incurred simply to get paid for his work.

**6. Pursuant to 28 U.S.C. § 1651 and the Inherent Powers of this Court, the Court should award Mr. Johnson his attorneys' fees to prevent a wrong from occurring, compelling a duty that should be performed, or under principles of equity.**

The All Writs Act provides Article III courts generally "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The All Writs Act allows Courts "to issue such commands ... as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in exercise of jurisdiction otherwise obtained." *United States v. New York Tel. Co.,* 434 U.S. 159, 98 S.Ct. 364, 54 L.Ed.2d 376 (1977). "The All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute. Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling." *Pennsylvania Bureau of Correction v. United States Marshals Service,* 474 U.S. 34, 43, 106 S.Ct. 355, 361, 88 L.Ed.2d 189 (1985). The Act empowers courts to "safeguard not only ongoing proceedings, but potential future proceedings." *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1099 (11th Cir. 2004). The All Writs Act serves as a "legislatively approved source of procedural instruments designed to achieve the rational ends of law." *Harris v. Nelson*, 394 U.S. 286, 299 (1969) (cleaned up). Thus, this Court can deter these kind of events in the future to achieve the rational ends of the law in the insurance appraisal process in Tennessee by ordering Plaintiff to not only remit payment for the umpire fees that (i) are required to be paid contractually by Plaintiff if he demands appraisal, (ii) to which Plaintiff's appraiser earlier agreed to pay, but also to pay for Mr. Johnson's attorneys' fees in responding to Plaintiff's Motion.

Further, it has long been understood that " '[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution,' powers 'which cannot be dispensed with in a Court, because they are necessary to the exercise of all others.' " *Chambers v. NASCO,*

*Inc.*, 501 U.S. 32, 43 (1991) (citation omitted). Permitting courts to rely upon their inherent authority to issue sanctions serves an equitable interest of controlling the "litigants before it and to guarantee the integrity of the court and its proceedings." *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 512 (6th Cir. 2002). With regard to inherent authority, the Supreme Court emphasized that "[a] primary aspect of discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers*, 501 U.S. at 44-45. Attorney's fees serve the dual purposes of "vindicat[ing] judicial authority" and "mak[ing] the prevailing party whole for expenses caused by his opponent's obstinacy." *Hutto v. Finney*, 437 U.S. 678, 689 n.14 (1978).

In this case, an award of Mr. Johnson's attorneys' fees is warranted, because Mr. Johnson has been forced into Court to defend his actions and fees only after the Plaintiff's representative agreed in writing to pay the fees, thereby inducing Mr. Johnson to perform considerable work in the Appraisal, only for Plaintiff to back out. This type of conduct is not the type of conduct the Court or the appraisal process should champion in Tennessee. The discretion to award Mr. Johnson his fees lies with this Honorable Court as there is no statute applicable. Therefore, under the inherent authority of this Court, or through the powers necessary to dispose of matters as law and justice require via 28 U.S.C. § 1651, this Honorable Court has the authority to award Mr. Johnson his attorney's fees based on the facts, conduct, statements, actions, and totality of circumstances surrounding Plaintiff's refusal to perform its contractually obligated duty to share in the expenses of appraisal.

> **7. The Affidavit in Plaintiff's Motion does not demonstrate the fees charged by the Court appointed appraisal Umpire were unreasonable.**

Setting aside the fact that Plaintiff's appraiser, Vince Perri, wrote he was "good with [Mr. Johnson' retainer" and agreed to pay it, Plaintiff's self-serving affidavit does not provide any detail

regarding the scope of the two losses that were appraised. Further, the affidavit does not include any statements that would guide the Court as to the difference in the appraisals Mr. Herring was involved with as opposed to these two appraisals. (Attached hereto as **Exhibit 2** is the Declaration of John C. Robison, and the Declaration of Charles H. Murray, Jr. as **Exhibit 3**.) Plaintiff's affidavit did not include the documentation, information, facts, and data involved in those appraisals. (Ex. 2 at Pgs. 6 – 7, 9; Ex. 3 at ¶ 14.)

In this case, the appraisal documents consisted of over three thousand (3,000) pages of photographs, correspondence, estimates, and other documents. (Ex. 1 at ¶ 14.) Further, there are no statements in Plaintiff's supporting affidavit regarding the jurisdiction of the appraisals, the type of properties or coverages appraised, the type of policy, or the language of the appraisal provision for each of those appraisals to gauge the reasonableness of fees. (Ex. 2 at Pgs. 6 – 7; Ex. 3 at ¶¶ 13 – 14.) Without this information, there is no basis to determine Mr. Johnson's appraisal fees are unreasonable for two appraisals. (Ex. 2 at Pgs. 7 – 8; Ex. 3 at ¶¶ 12, 14.) These proof failures of Plaintiff are in addition to Plaintiff's failure to address the site visits, interviews, and research conducted by Mr. Johnson. (Ex. 1, at ¶ 9; Ex. 3 at ¶¶ 4.a. – 4.j.)

## CONCLUSION

Plaintiff demanded appraisal in two lawsuits. Mr. Johnson was the Court appointed umpire for the appraisals in this matter, which was conducted under the Policy's appraisal clause. The Policy provides the parties will share in the costs of an appraisal and umpire equally, that includes securing attorneys' fees for securing payment for his disclosed umpire fee. Mr. Johnson provided the anticipated cost and expense of the appraisals to the parties prior to beginning his work as the umpire. Plaintiff's appraiser agreed to pay the amount listed by Mr. Johnson, after which Mr. Johnson began his work. Plaintiff improperly seeks to avoid paying its agreed upon amount, because, presumably, it is unhappy with the draft award shared by the umpire. Plaintiff's position

is meritless. Plaintiff is estopped from disputing the amount of Mr. Johnson's appraisal fee after having full knowledge and notice of the anticipated cost of the consolidated appraisals. Additionally, Plaintiff's representative, its appraiser, bound Plaintiff to pay the requested umpire fee. Finally, the Court is within its discretion to award Mr. Johnson his full invoice amount, as well as his reasonable attorneys' fees and expenses for being forced to respond to this meritless motion.

Respectfully Submitted,

*/s/ Matthew B. Rogers*
Brian C. Neal (TN BPR No. 022532)
Matthew B. Rogers (TN BPR No. 038777)
Burr & Forman, LLP
222 2nd Avenue South, Suite 2000
Nashville, TN 37201
615-724-3200 (office) / 615-724-3290 (fax)
bneal@burr.com / mrogers@burr.com

*Attorneys for Court Appointed Appraisal Umpire, Toby Johnson d/b/a Omega Insurance Appraisals*

## CERTIFICATE OF SERVICE

I hereby certify that on July 10th, 2025, a copy of the foregoing has been served via the Court's CM/ECF system on the following:

David S. Farber
The Farber Law Firm
2199 Ponce de Leon Blvd., Suite 301
Coral Gables, FL 33134

John D. Drake
421 W. College Street
Murfreesboro, TN 37130

Allan S. Jones
Carr Allison, PC
100 Vestavia Pkwy.
Birmingham, AL 35216

Jordan D. Watson,
Carr Allison, PC
736 Market Street, Suite 1320
Chattanooga, TN 37402

Drayton Berkley
1255 Lynnfield Road, Suite 266
Memphis, TN 38119

*/s/ Matthew B. Rogers*