WILLIAM SAVEH D/B/A OLYMPIC
STEAKHOUSE,

     Plaintiff,

     v.

WESTERN WORLD INSURANCE
COMPANY,

     Defendant.

Case Nos: 1:21-cv-02373-JDB-jay
1:23-cv-02191-JDB-jay

## DECLARATION OF TOBY JOHNSON

1.      My name is Toby Johnson and I am an adult citizen of the State of Tennessee.

2.      I am the sole owner of Omega Insurance Appraisals, based in Jackson, Tennessee.

3.      I have worked in the property insurance industry for more than twenty-three years. During this time, I have held both Independent and Public Insurance Adjuster licenses in numerous states, and I have actively participated in the evaluation, appraisal, and adjustment of thousands of property insurance claims. My professional career has been devoted to the detailed analysis and estimation of property damage, with a particular focus on determining accurate scopes of repair and the associated costs necessary to restore damaged properties in accordance with prevailing industry standards and policy provisions.

4.      Over the course of my career, I have served as either an appraiser or neutral umpire in more than 1,000 insurance appraisal matters across over twenty states. I have been appointed as a neutral appraisal umpire in more than 350 matters, including at least fifteen formal court appointments across multiple jurisdictions, with seven of those appointments made by courts in the State of Tennessee. I have successfully resolved complex insurance appraisal disputes

1

**Exhibit 1**

involving contested property damage claims with values in excess of fifty million dollars. I have personally adjusted thousands of property claims while representing both insurers and insureds. Throughout my career, I have never had a license revoked, suspended, or been the subject of any disciplinary action.

5. Over the past five years, my professional efforts have been devoted primarily to the insurance appraisal community. I currently serve on the Board of Directors for the Insurance Appraisal and Umpire Association (IAUA), of which I have been a certified member since 2019. I have also been a member of the Property Loss Appraisal Network (PLAN) since 2019. From 2019 through 2023, I played an active role in supporting PLAN's educational mission, including participating in presentations, lectures, curriculum development, and the administration and proctoring of certification examinations. I have been invited as a guest speaker at various industry events and conferences, where I have served on expert panels addressing the insurance appraisal process. In addition to my appraisal work, I also serve as a neutral in arbitration tribunals involving disputed property insurance claims.

6. On November 12, 2024, I received email notice from appraiser Ken Abernathy informing me that I had been appointed by the Honorable Judge Daniel Breen to serve as the neutral umpire in the appraisal matter involving Olympic Steakhouse and Western World Insurance Company. In that email, Mr. Abernathy explained that the appraisal panel had been tasked with evaluating two separate losses: one involving hail, wind, and water damage from May 3, 2020, and another involving freeze and water damage from February 21, 2021. He also advised that Mr. Vince Perri of Elite Resolutions had been designated as the insured's appraiser. Additionally, Mr. Abernathy noted that the Court had imposed a 90-day deadline for completion of the appraisal

process, beginning October 16, 2024. Attached hereto as **Exhibit A** are the November 12, 2024 email communications.)

7.      I promptly responded that same day with my standard protocol and engagement letter, which I have consistently used for approximately eight years, with minor modifications tailored to the particulars of each assignment. In that correspondence, I clearly disclosed my compensation structure and offered the appraisers the choice between a flat-rate fee or an hourly billing arrangement. I advised that payment would be due within thirty (30) days of the invoice date, and that any unpaid balance would be subject to a late fee of 3.33% per month. I further stated that full payment of my service fees would be required prior to the issuance of the final signed award. *See* **Ex. A**, 5:41 PM email from Toby Johnson.

8.      Throughout the course of my career as both an appraiser and an umpire, I have never observed an umpire directly negotiate service fees with a principal party to the dispute. As a neutral, it is my consistent and ethically grounded practice to present my fee structure to the appointed appraisers, not to the parties themselves. In my view, direct negotiation or communication regarding compensation with a party to the dispute would compromise the neutrality of the role and is therefore inappropriate.

9.      For approximately eleven years, it has been my standard operating procedure to require that payment for my services be made prior to issuance of the final signed appraisal award. However, I do not require full payment in advance of beginning my work. In every case, including this one, I commence work in good faith, reviewing documents, conducting site inspections, participating in panel discussions, and actively fulfilling my duties, based on the understanding that the parties will honor the applicable terms of the insurance policy and comply with any court order governing the appraisal process. The requirement that payment be made prior to the final

release of the award is a professional safeguard to ensure timely and proper closure of the matter. This practice is widely accepted within the insurance appraisal community and does not violate any ethical standards established by either the Insurance Appraisal and Umpire Association (IAUA) or the Property Loss Appraisal Network (PLAN).

10.     My standard hourly rate to serve as an appraisal umpire is $395 per hour. However, due to the increasing frequency of court-imposed or contract-mandated deadlines for appraisal completion, I also offer an expedited hourly rate for urgent matters. In this case, no advance warning was provided, and upon learning that I had been court-appointed with a 90-day deadline already underway, I prioritized this matter in deference to the Court's directive. Accordingly, the applicable rate was $450 per hour.[1] At no point during my career as an appraisal umpire have my hourly fees ever been disputed, challenged, or deemed excessive, until the filing of this instant motion.

11.     On November 19, 2024, both appraisers, including the Plaintiff's appraiser, Mr. Vince Perri, acknowledged receipt of my engagement letter and provided written confirmation that the hourly rates outlined therein were acceptable. That same day, I sent a follow-up email confirming their election to proceed under an hourly billing arrangement and outlining the projected timeline for completion of the appraisal process in accordance with the Court's 90-day deadline. In that correspondence, I also reiterated my standard policy that the final signed appraisal award would not be released until my fee had been paid in full by both parties. I further requested that all documentation the appraisers intended to rely upon in support of their respective positions be submitted to me promptly so that I could begin my review of the scope of loss and the disputed issues. In order to maintain momentum and accommodate the upcoming Christmas and New Year

---

[1] *Umpire's fees are generally hourly and can range typically from $150 to as high as $400, $500 or $600 per hour. — Jonathan J. Wilkofsky, The Law and Procedure of Insurance Appraisal, 3rd Ed., p. 450*

holidays, I proposed that the panel conduct a joint site inspection during the week of December 9, 2024. All of this correspondence is collectively attached as **Exhibit B**.

12.     On November 27, 2024, I received Mr. Abernathy's appraisal packet, which consisted of 49 separate attachments, including 344 individual photographs. That same day, I also received Mr. Perri's appraisal submission, which included 107 individual documents, hyperlinks, and photographic materials. Attached hereto as **Exhibit C** are the 11/27/24 emails.

13.     Mr. Abernathy's submission was clearly labeled and well-organized, with exhibit numbers, narrative reports, and distinct sections addressing the damages attributable to each of the two covered perils. By contrast, Mr. Perri's submission lacked structure or coherence. The documents were not labeled in any logical sequence, no narrative report was provided to outline or support his position, and there were no photographs indicating that he had personally inspected the property. Furthermore, the submission did not differentiate the claimed amounts of loss between the two separate perils. In my professional opinion, the shared link consisted of a disorganized-hodgepodge and incomplete compilation of materials that required me to open and individually review each file in order to determine its relevance.

14.     Recognizing the importance of the matter and the Court's directive to resolve the appraisal within 90 days, I prioritized this file above all others and spent a considerable portion of that same day reviewing both submissions to familiarize myself with the disputed issues. I determined there was an approximate $1.7 million discrepancy between the valuation provided by the policyholder's appraiser and that of the insurance company. Collectively, the appraisers submitted approximately 3,187 pages of material. While I did not review each page in detail that day, I conducted a thorough initial review sufficient to evaluate the complexity of the issues and prepare a proper retainer invoice.

15.     Later that day, I sent a retainer invoice to both appraisers via email and requested that each promptly forward it to their respective principals. I also invited either appraiser to contact me with any questions or concerns. (See Exhibit C.) On December 3, 2024, Mr. Perri responded by email stating, "I am good with your retainer and I will forward it over." (See **Exhibit D**.) In that same email, Mr. Perri also noted that his schedule would not allow for a timely site inspection of the property, and the panel subsequently agreed to seek an extension from the Honorable Court.

16.     On January 3, 2025, I sent an email to the appraisal panel confirming the dates of loss and the claim numbers associated with each peril under review. In that same communication, I requested that each appraiser provide the names and roles of any experts they intended to rely upon in support of their valuations. I also reminded the panel that the retainer invoice, originally issued on November 27, 2024, remained unpaid as of that date.

17.     Mr. Abernathy responded on January 7, 2025, indicating that his legal counsel would be requesting an extension from the Court. He also acknowledged that he had instructed payment of the retainer invoice to be routed through counsel.

18.     Mr. Perri replied to my January 3 email on January 22, 2025, advising the panel that he would reach out to the policyholder's attorney regarding payment of the outstanding retainer. (See **Exhibit E**.)

19.     I then relied on Mr. Perri's statements and conduct and on January 23, 2025, the appraisal panel held a conference call to discuss preparations for the upcoming inspection at the property. During that call, Mr. Perri advised that he intended to rely on Mr. William Griffin as his expert to assist in valuing the loss and requested that Mr. Griffin be permitted to attend the panel's on-site inspection. It is my understanding that Mr. Griffin is the policyholder's public adjuster and therefore has a direct financial interest in the outcome of the appraisal. Mr. Abernathy objected to

Mr. Griffin's presence on that basis, citing Mr. Griffin's role as an advocate for the insured. Mr. Perri reiterated his strong preference that Mr. Griffin be allowed to attend. I advised the panel that I would take the request under advisement, and stated that if Mr. Griffin were permitted to be present during the panel's inspection of the property, it would only be fair and appropriate to allow the insurance carrier to have its representative present as well. While that arrangement was not ideal, I committed to considering the request further before making a final determination.

20.     Between January 23 and January 29, 2025, a series of email exchanges took place in which both appraisers continued to reiterate their positions regarding the participation of Mr. William Griffin in the panel's upcoming site inspection. Mr. Perri consistently expressed a strong desire for Mr. Griffin to be present, while Mr. Abernathy maintained his objection. Based on the tone and content of the communications, it appeared to me that Mr. Perri was relying on Mr. Griffin to support and present the insured's position because he had not independently valued the loss himself. Mr. Abernathy also advised the panel that, due to the short notice, the insurance company would not have a representative available to attend the scheduled inspection on January 30.

21.     On January 29, 2025, I informed the panel via email that I had reached a decision that: Mr. Griffin would not be permitted to attend the site inspection. My reasoning was based on the principle that appraisers and the umpire must remain unbiased and independent, and in my professional judgment, allowing an advocate for one of the parties to be present, particularly when the other side would not have equal representation, would not be appropriate or fair. Both appraisers acknowledged my decision.

22.     Due to Mr. Abernathy feeling unwell in the days leading up to the scheduled site inspection, the appraisal panel inspection was rescheduled from January 30 to January 31, 2025. On January 31, the panel convened at the property to review the reported damages and discuss the

scope of loss. Upon arrival, the appraisers exchanged pleasantries, and we began the inspection by discussing the background and circumstances of the two separate loss events.

23.     Mr. Abernathy came to the meeting well-prepared and demonstrated a clear understanding of both his own submission materials and those provided by Mr. Perri. During the inspection, I asked both appraisers a series of questions to better understand their respective positions. Mr. Perri was unable to answer a number of basic questions regarding the documentation he had submitted. At one point, when asked about references to prior losses at the property, Mr. Perri stated that he was unaware of any. I then showed him documents referencing prior claims that had been included in his own submission. Upon reviewing them, Mr. Perri acknowledged the oversight, seemingly embarrassed he apologized and stated that he had forwarded everything he received from the public adjuster, Mr. Griffin, without reviewing the material in detail.

24.     When I asked Mr. Perri about the basis for his claimed amount of loss, he stated that he intended to rely solely on Mr. Griffin's estimate because he believed it to be fair and reasonable. As we walked the property and inspected the roof systems, it became apparent that Mr. Perri was not fully familiar with which areas were being attributed to each reported peril. While inspecting the restaurant roof, he turned to me and asked, "You are a roof expert, right? Could you help me out a little bit here in finding the damages?" I reminded Mr. Perri that, as the appointed neutral umpire, it was my role to review the evidence and testimony presented, not to assist either party in articulating their position.

25.     Mr. Abernathy maintained his position that there was no peril-related damage to the restaurant's roofing system and provided detailed commentary in support of his opinion. I continued to ask clarifying questions of both appraisers throughout the site visit. As we moved through the interior of the building, Mr. Perri asked me several times, "What do I have in this

room?" or "What am I claiming in this area?" These questions led me to conclude that Mr. Perri did not appear to be personally familiar with the specific scope of damages being claimed by the insured or by Mr. Griffin, upon whom he had chosen to rely.

26. In contrast to Mr. Perri, Mr. Abernathy demonstrated detailed knowledge of the disputed items between his estimate and the estimates submitted by Mr. Griffin. Based on the appraisal panel's discussion during the inspection, it became apparent that the scope of work proposed by Mr. Griffin, and relied upon by Mr. Perri, did not accurately reflect the appropriate means and methods required to restore the property in relation to the specific perils at issue. Mr. Abernathy expressed confidence in his evaluation of the roofing systems and provided well-reasoned explanations supporting his conclusions. Mr. Perri, by comparison, was unable to articulate or present any independent evidence to support additional damage to the roof systems beyond what had already been acknowledged by the insurer or its experts.

27. When the panel proceeded to evaluate the interior of the property, the parties discussed the fact that Mr. Griffin's scope of work for interior repairs was significantly broader than what had been accepted by the insurer. During that discussion, Mr. Abernathy indicated a willingness to consider a more flexible position on interior items *if* Mr. Perri were similarly willing to take a reasonable approach regarding the roofing-related components. Without making any formal concessions, both appraisers proceeded under a shared understanding that their goal was to reach agreement on as many disputed items as possible. The panel engaged in a collaborative discussion and mutually acknowledged that a broader interior scope could be allowed as part of an effort to reach a joint resolution. Both Mr. Perri and Mr. Abernathy confirmed their understanding of this framework as the scope of work was discussed, expressing a desire to resolve the matter by

consensus rather than requiring me to render a decision on each issue based strictly on the evidence provided.

28.     On February 10, 2025, I sent an email to the panel advising that I had begun preparing a draft appraisal award. In that message, I stated that I was operating under the assumption that the Court's deadline had been extended to March 3, 2025. I also advised the appraisers that I had not yet received payment of my previously issued retainer invoice, and that, consistent with the agreed terms, a late fee would be assessed. Mr. Abernathy responded the following day, confirming the March 3, 2025 deadline and stating that he would follow up with counsel for the insurer regarding payment.

29.     On February 28, 2025, I circulated a draft appraisal award to both appraisers. The draft reflected my understanding of the mutual concessions and scope agreements discussed during the site inspection. It was distributed via email and further discussed in a telephone call held with the panel later that same day. The proposed draft award included $83,186.42 for the Wind and Hail claim and $139,087.99 for the Ice and Snow claim.

30.     On March 3, 2025, I received payment from the insurance company for the outstanding retainer invoice. That same day, Mr. Perri submitted a group of ten photographs and a handwritten list that he described as a contents inventory provided by the insured. The submission lacked any explanation of when or how the alleged contents were damaged, the date of the handwritten list, or any supporting documentation to explain the basis for the claim.

31.     On March 18, 2025, Mr. Perri sent an email to the panel expressing his dissatisfaction with the draft award. The tone and content of the email differed significantly from his prior communications, and it was inconsistent with the cooperative approach he had expressed during the site meeting, specifically regarding mutual concessions that would potentially allow for

a three-party award. In the same message, Mr. Perri stated that counsel for the policyholder had raised concerns about the amount of my invoice and requested a detailed breakdown of how the charges were calculated. I responded that same day, referencing my prior emails dated November 12 and November 17, and provided a detailed explanation of my fee structure and billing. (See **Exhibit F**.)

32.    On April 10, 2025, Mr. William Saveh, the Plaintiff and presumed owner of Olympic Steakhouse, emailed me directly with questions regarding my fees. The email did not include any representatives from the insurance company. Because it would have been inappropriate for me to respond in an ex-parte manner, I instructed my Chief Operating Officer, Ryan Hysmith, to respond. Mr. Hysmith replied to Mr. Saveh and properly copied Plaintiff's counsel, Mr. Farber, on the communication. A copy of Mr. Hysmith's response is attached as **Exhibit G**.

33.    On May 27, 2025, I sent an email to both appraisers and legal counsel for each party. In that communication, I summarized the procedural history of the appraisal, explained the work performed, detailed the basis for my fees, and clarified why the panel had not yet concluded its work. This correspondence is included as **Exhibit H**.

34.    I did not receive any response from the plaintiff or their counsel until the Honorable Court directed the parties to provide notice of their intent to file a motion to limit my fees.

35.    At every stage of this appraisal, I have acted in the utmost good faith, with transparency, diligence, and strict adherence to the ethical standards expected of a neutral appointed by this Honorable Court. My fee schedule and payment terms were clearly disclosed to both appraisers at the outset, acknowledged in writing, and reaffirmed throughout the course of the proceeding. I made every effort to accommodate the Court's deadline, prioritize this matter over others, and facilitate a fair and collaborative resolution between the appraisers. At no time did

11

I withhold participation or act punitively in response to delays in payment. Rather, I fulfilled all duties associated with my appointment and exercised restraint and professionalism even in the face of delayed responses, disorganized submissions, and, ultimately, unfounded accusations.

36. The suggestion that my fee was unexpected or excessive is contradicted by the comprehensive record, the written acknowledgments of the panel members, and the scope of work involved. This matter included thousands of pages of documentation, multiple perils, and inconsistent participation from one of the appraisers. Despite these challenges, I performed my role impartially and with the seriousness such an appointment demands.

37. On or about February 28, 2025, Western World issued payment to me for one-half of my umpire fee, in the amount of $9,000.00, without objection or dispute. Attached hereto as **Exhibit I** is a true and correct copy of Western World's umpire fee payment.

38. I respectfully submit this declaration to clarify the factual record, to correct misrepresentations made to the Court, and to reaffirm my commitment to the principles of fairness, neutrality, and professional integrity that underlie the appraisal process.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on 9th day of July, 2025.

**TOBY JOHNSON**

 **Outlook**

---

## Re: Appraisal for Olympic Steakhouse - Umpire Notice and Engagement

---

**From** Toby Johnson <toby@omegabcs.com>

**Date** Tue 11/12/2024 5:41 PM

**To**    Abernathy, Ken A. <Kenneth.Abernathy@sedgwick.com>

**Cc**    Vince Perri <vince@eliteresolutions.com>

---

📎 1 attachment (242 KB)

Toby J. Johnson - Umpire Fee Schedule - 2024.pdf;

Mr. Abernathy and Mr. Perri,

Per your mutual agreement and in accordance with the Honorable Court's order, I will see this matter to resolution.

For the sake of impartiality, I will require that All communications regarding this loss Appraisal be conducted by and include ALL members of the Appraisal Panel in a <u>**Non-Ex-Parte**</u> manner.

It is my standard procedure to visit the loss location when I am serving as an umpire, unless **Both Appraisers Agree** in writing that a site visit is not necessary.

Please be advised that I will not tolerate ***"Appraisal by Ambush"*** *from* either panel member. 11th Hour submissions do not sit well with me, so please make sure to present all of your evidence in an expedited manner. At this time, I am requesting that **all** information that you are relying on to establish your position for this appraisal be submitted to me so I may start my review. I would ask that all related information be submitted by both appraisers to the full panel as soon as possible inclusive of all photos, expert reports, and esx files. Please notify the panel if you do not have your complete appraisal package ready for submission, and we can discuss appropriate deadlines for the submission.

Once I complete my review of the information shared <u>between and by both Appraisers</u> and submitted unto me, I will be in a better position to understand the differences and offer dates for our site inspection. Once we as a complete panel perform such a meeting and if I feel it is necessary, I will create a Draft ***Appraisal Award based*** upon the information provided unto me and allow both appraisers a minimum 48-hour window to provide or inform of a forthcoming rebuttal. Please understand that I am not required to offer any type of a draft award; however, I offer Draft awards as a courtesy only. If I elect to offer a draft award, ***<u>I WILL NOT ACCEPT signatures</u>*** to any presented draft award. Once I have your <u>**Final Rebuttals**</u>, I will review and make any determined changes to my award and present you both with a Final Award for Acceptance or Declination.

Even though **<u>it only takes any two signatures to validate the Award</u>**; it is my goal to find an amicable and just resolution for this loss and obtain a three-signature award.

**Exhibit A**

My fee for this appraisal can be a flat rate or hourly rate based on the attached fee schedule. The appraisers should review and decide if they desire a fixed "not to exceed amount" or an "opened-ended" hourly rate. If the hourly rate is chosen, I will require a retainer be paid prior to any site visit. If the flat rate option is chosen, I will not require payment before the site visit, but may request a retainer payment after the initial site visit. For either option, my fee will be split equally between both principal parties. If the two appraisers cannot agree on a fee option, the default Hourly Rate (Option 1) will be utilized. I am willing and able to comply with the court order to have an award recorded within 90 days of the order or by January 25, 2025. This has become fairly common over the years and my fee schedule accommodates for situations with imposed deadlines. To comply, I need the appraisers to understand that a tight schedule will be required.

By acceptance of this appointment, both parties (as agreed by their appointed appraiser) agree to make payment to the umpire within 30 days of receipt of the umpire's invoice. For any payment which is not made within thirty (30) days of the due date for such payment, the parties shall pay a late fee. The late fee shall equal three and one-third percent (3.33%) of the unpaid portion of the past-due payment for each month (0.111% daily) the payment is not received up to the maximum amount permitted by law.

Lastly, I will require my service fee to be paid in full BEFORE I render the final award. My signature will not be placed on any award until payment is received by both parties, so please make this a priority with your clients.

I look forward to working with you both in a continued professional and amicable manner to bring a fair and equitable resolve to this Appraisal.

**Best Regards,**

**Toby Johnson, APAC, CPAU, CPLAU, HCI-C, HCI-R, IICRC(MSR), RIA, XSME**

**Omega Building Consultants**

Principal & Founder

806-438-7457: Cell

731-256-6446: Office

[Toby@Omegabcs.com](mailto:Toby@Omegabcs.com) || [www.Omegabcs.com](http://www.Omegabcs.com)

Thank you for choosing Omega Building Consultants

---

**From:** Abernathy, Ken A. <Kenneth.Abernathy@sedgwick.com>
**Sent:** Tuesday, November 12, 2024 12:18 PM
**To:** Toby Johnson <toby@omegabcs.com>

**Cc:** Vince Perri <vince@eliteresolutions.com>
**Subject:** Appraisal for Olympic Steakhouse - Umpire Notice and Engagement

Good afternoon Toby –

Please accept this email as notice of your appointment by Federal Judge Daniel Breen, per the attached docket summary.

This loss involves two separate claims/occurrences which we as the panel have been tasked to appraise under one appraisal. The losses are:

- Date of Loss: 5/3/2020 for wind, hail and water
- Date of Loss: 2/21/2021 for freeze and water

Vince Perri of Elite Resolutions is the insured's appraiser and we have reached an impasse on scope and generally discussed costs. While our deliberations and discussions have been professional and cordial, we request your assistance in moving forward with this appraisal. Please send us your thoughts on plan of action and specific requests to get this started.

As a note, the judge requested this appraisal be completed in 90 days from 10/16/24. If you think that timeframe is going to be difficult to meet, please let us know so attorneys can request an extension. However, we do not wish to drag this out unnecessarily.

Thanks,

**Ken Abernathy, AIC** | Executive General Adjuster
**Sedgwick Claims Management Services, Inc.**
131 Saundersville Road, Suite 220 | Hendersonville, TN 37075
OFFICE +1 615-590-1550
CELL +1 423-290-6150 | EMAIL Kenneth.Abernathy@sedgwick.com
FL License # P216832
Sedgwick Claims Management Services CA License #2549023
**A.Morrow Qualifier Manager, CA License #2M23217**
Caring counts®



---

Any personal data acquired, processed or shared by us will be lawfully processed in line with applicable data protection legislation. If you have any questions regarding how we process personal data refer to our Privacy Notice. Any communication including this email and files/attachments transmitted with it are confidential and are intended solely for the use of the individual or entity to whom they are addressed. If this message has been sent to you in error, you must not copy, distribute or disclose of the information it contains and you must notify us immediately (contact is within the privacy policy) and delete the message from your system.

 Outlook

---

## Re: Appraisal for Olympic Steakhouse - Umpire Notice and Engagement

---

**From**  Toby Johnson <toby@omegabcs.com>

**Date**  Tue 11/19/2024 10:15 PM

**To**    Vince Perri <vince@eliteresolutions.com>; Abernathy, Ken A. <Kenneth.Abernathy@sedgwick.com>

---

Appraisers,

Thank you for your prompt response. Please submit your packets to me individually and once I receive both, I will circulate the packets to all panel members. With the court imposing a tight deadline, I believe we need a formal schedule to make sure we comply with the court's order. Below is my proposed schedule. Please review and confirm that this can be accomplished with your schedules.

- 11/27 - All reports are to be submitted to the umpire inclusive of any expert reports
- Week of 12/09 - Panel inspection of the property and exhibition of materials, experts, exhibits, etc... *
- 12/17 - Panel video conference to address any questions of the umpire.
- 01/07 - Umpire to submit final invoice for payment to the appraisers. **
- 01/20 - Umpire may submit draft award to appraisers for review and rebuttal. ***
- 01/24 - Umpire will issue signed appraisal award to the appraisers. ****

\* Let's hold two consecutive days for this at this time pending the type of loss, amount in dispute, and number of disputed areas. We may not need two full days, but at this point I do not know the extent of the dispute or how extensive this matter is until I receive your packets. If we only need one day, that is fine; however, I can secure a conference room in Jackson where the appraisers can present their findings in a more formal manner because sometimes it's difficult to present information at the loss location.

\*\* By this time, I will complete my draft award (presuming I elect to provide one) and will have a total amount of hours detailed. I will add in two additional hours for a rebuttal period review in the event that you may wish to provide a rebuttal to my draft award.

\*\*\* If I elect to supply a draft award, I will release it only after payment if received from both parties. I will give the appraisers a timeframe in which they can review the draft award and offer their rebuttals with a minimum of 48 hours.

<mark>\*\*\*\* The umpire will not release the final award until the final invoice is paid in full by both parties.</mark>

Please advise if this proposed schedule can be agreed upon and we will proceed accordingly.

Billing will be T&E as detailed prevosuly.                              **Exhibit B**

Thanks Gentlemen!

**Best Regards,**

**Toby Johnson, APAC, CPAU, CPLAU, HCI-C, HCI-R, IICRC(MSR), RIA, XSME**

**Omega Building Consultants**

Principal & Founder

806-438-7457: Cell

731-256-6446: Office

[Toby@Omegabcs.com](mailto:Toby@Omegabcs.com) || [www.Omegabcs.com](http://www.Omegabcs.com)

Thank you for choosing Omega Building Consultants

---

**From:** Vince Perri <vince@eliteresolutions.com>
**Sent:** Tuesday, November 19, 2024 7:06 PM
**To:** Abernathy, Ken A. <Kenneth.Abernathy@sedgwick.com>
**Cc:** Toby Johnson <toby@omegabcs.com>
**Subject:** Re: Appraisal for Olympic Steakhouse - Umpire Notice and Engagement

Panel,

<mark>The billing does not make any difference to me.</mark> My plan is to submit all of my information to you before the end of the week.



**Phone:** (941) 225-8225
**Office:** (941) 932-8535
**Fax:** (941) 932-8536
**Email:** [vince@eliteresolutions.com](mailto:vince@eliteresolutions.com)

**Commercial Claims Advocate &
Elite Resolutions**

[www.commercialclaimsadvocate.com](http://www.commercialclaimsadvocate.com)
[www.eliteresolutionsclaims.com](http://www.eliteresolutionsclaims.com)



**Vince Perri**
Owner at Elite Resolutions and
Commercial Claims Advocate

**Florida LIC** #P121399 | **Texas LIC** #2528285
**California LIC** #2L82947 | **North Carolina LIC** #9777295

On Tue, Nov 19, 2024 at 6:30 PM Abernathy, Ken A. <Kenneth.Abernathy@sedgwick.com> wrote:

Toby –

Thanks for your follow up.

Regarding my formal position, I plan to have that to you both by Wednesday of next week. I'm traveling all this week and won't have time to finish up my package.

==Regarding your billing, I would prefer you to bill in time and expense basis.==

Vince – What are your thoughts on billing?

Thanks,

Ken

**Ken Abernathy, AIC** | Executive General Adjuster
**Sedgwick Claims Management Services, Inc.**
131 Saundersville Road, Suite 220 | Hendersonville, TN 37075
OFFICE +1 615-590-1550
CELL +1 423-290-6150 | EMAIL Kenneth.Abernathy@sedgwick.com
FL License # P216832
Sedgwick Claims Management Services CA License #2549023
A.Morrow Qualifier Manager, CA License #2M23217
Caring counts®



---

**From:** Toby Johnson <toby@omegabcs.com>
**Sent:** Tuesday, November 19, 2024 3:26 PM
**To:** Abernathy, Ken A. <Kenneth.Abernathy@sedgwick.com>
**Cc:** Vince Perri <vince@eliteresolutions.com>
**Subject:** Re: Appraisal for Olympic Steakhouse - Umpire Notice and Engagement

**CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe...**
Good afternoon appraisers,

Just wanted to follow up on my email from 11/12.

Please advise?

       **Best Regards,**

 **Outlook**

---

## Re: Appraisal for Olympic Steakhouse - Umpire Notice and Engagement

---

**From** Toby Johnson <toby@omegabcs.com>

**Date** Wed 11/27/2024 4:23 PM

**To** Vince Perri <vince@eliteresolutions.com>

**Cc** Abernathy, Ken A. <Kenneth.Abernathy@sedgwick.com>

📎 1 attachment (260 KB)

Omega Invoice 24038 - Olympic Steak & Pizza ~ Western World Insurance.pdf;

Good Day Appraisers,

Thank you both for providing your report positions as requested. I am forwarding a single link below so each of you have access. This single email should work to provide both of you with each other's position. Should you have any problems accessing the documents, please let me know.

At this time, I have only conducted a cursory review of the documents; however, I see that this is going to be a highly disputed matter with many disputes to discuss. Based on my short review, I believe that you two are roughly $1.7 Million apart; however, I cannot confirm this yet, as it is difficult for me to assess what values might go to which claim.

In my quick review, I believe that I have been provided with approximately 3,187 pages of material to consider between both of you and both of you appear to be relying (at least in-part) on other experts to support your position. Given the magnitude of the data to consider and the disputes presented, I am going to request that we meet in-person as a complete panel to discuss this matter further. With that, I can tell that this is not a disputed matter that will be resolved with one meeting. I anticipate a few days will be needed to hash out the issues with this matter. I am going to also request that each appraiser present their position to the umpire in-person utilizing any experts they are relying on to support their position. I noticed that there are several different expert reports in your submissions, and I wanted to quickly understand what experts you are relying on to establish your valuation of the loss.

After seeing the file material today, I do not believe a solo inspection by the umpire would be very efficient. I am requesting that each appraiser attend the site inspection so that the damages and disputes can be discussed openly as a panel.

If we are going to have this matter resolved by 01/24/25, we are going to have to move very intentionally over the next 2 months. I am requesting a two-day meeting the week of 12/09. Since, I am local, I can be flexible for any two days that work for both of you. The first day will be reserved for presentations and testimony and the second day will be reserved for the site inspection. Please confirm that this will work for each of you.

Additionally, due to the extent of material that I will be reviewing over the next few weeks, I have attached a retainer invoice to this email and I ask that you both please present this to your principals.

**Exhibit C**

Please review and let me know if you have any questions or concerns with any of the above.

I look forward to working with each of you to see this matter to resolution.

Happy Thanksgiving!

https://www.dropbox.com/scl/fo/amyqw310egjnq1vmuqrn0/AKYZdSrjGl3rl5sbVE8DjUM?rlkey=rgnojnx2ub7t6xna3vfxsqdg4&st=of3gpmeh&dl=0

**Best Regards,**

**Toby Johnson, APAC, CPAU, CPLAU, HCI-C, HCI-R, IICRC(MSR), RIA, XSME**

**Omega Building Consultants**

Principal & Founder

806-438-7457: Cell

731-256-6446: Office

Toby@Omegabcs.com || www.Omegabcs.com

Thank you for choosing Omega Building Consultants

---

**From:** admin@eliteresolutions.com <admin@eliteresolutions.com> on behalf of Vince Perri <vince@eliteresolutions.com>
**Sent:** Wednesday, November 27, 2024 1:21 PM
**To:** Toby Johnson <toby@omegabcs.com>
**Cc:** Abernathy, Ken A. <Kenneth.Abernathy@sedgwick.com>
**Subject:** Re: Appraisal for Olympic Steakhouse - Umpire Notice and Engagement

Good Afternoon All,

On behalf of Vince, I've shared a link to both of your emails to access our full file. You could also click here or copy/paste the following link into your browser for your convenience -

https://app.jobnimbus.com/ShareView.aspx?guid=112c6a33-d5f8-4bd7-8188-ef8ebaee3819

 **Outlook**

---

## Re: Appraisal for Olympic Steakhouse - Umpire Notice and Engagement

---

**From** Vince Perri <vince@eliteresolutions.com>

**Date** Tue 12/3/2024 7:00 AM

**To** Abernathy, Ken A. <Kenneth.Abernathy@sedgwick.com>

**Cc** Toby Johnson <toby@omegabcs.com>

Good Morning Guys,

I'm going to have to agree with Ken. Between having to come in from out of town, and it being the holidays with such a tight schedule, I too would need to postpone our inspections until January. I am good with the two days, except the fact that I will be traveling from January 10-20th. Therefore I'm available January 6-8, 22-24, and the entire week of the 27th.

Toby, I'm good with your retainer and will forward it over. In regards to the experts, I'll confirm that information with you after taking another look at the file. I just wanted to get back to you all about the inspections.

Vince Perri
Owner at Elite Resolutions and Commercial Claims Advocate
Phone: (941) 225-8225
Office: (941) 932-8535
Fax: (941) 932-8536
Email: vince@eliteresolutions.com
Commercial Claims Advocate &
Elite Resolutions
www.commercialclaimsadvocate.com
www.eliteresolutionsclaims.com
facebook icon youtube icon linkedin icon instagram icon
Florida LIC #P121399 | Texas LIC #2528285
California LIC #2L82947

On Mon, Dec 2, 2024, 5:08 PM Abernathy, Ken A. <Kenneth.Abernathy@sedgwick.com> wrote:

> Toby and Vince –
>
> Thanks for your time on this matter.
>
> Toby –

**Exhibit D**

 **Outlook**

## Re: Appraisal for Olympic Steakhouse - Umpire Notice and Engagement

**From** Vince Perri <vince@eliteresolutions.com>

**Date** Wed 1/22/2025 7:32 AM

**To** Abernathy, Ken A. <Kenneth.Abernathy@sedgwick.com>

**Cc** Toby Johnson <toby@omegabcs.com>

📎 11 attachments (16 MB)
Invoice.pdf; Complaint.pdf; Hail Summary from AccuWeather.pdf; Hail Report Receipt.pdf; Additional Endorsements.pdf; Hail Report from Storm Track.pdf; SPOL.pdf; PA Photo Report.pdf; Anderson Roof Report.pdf; Forensic Weather Report.pdf; Demand Estimate.pdf;

Toby,

Please see attached all of our expert documentation that has been gathered throughout the life of this claim. There are also some additional invoices of monies that have come out of pocket by the insured and representative of the insured. Regarding the experts, I cannot guarantee that any of the experts will be present for our inspection, but I will try to get someone there. Regarding the .esx, I have not been able to get my hands on them, but will continue to try. If the valuation you are referring to is the amount that we are claiming, that number is in the Helping Hands estimate that I have attached. Lastly, I will reach out to the attorney regarding the payment of your retainer.





**Vince Perri**
Owner at Elite Resolutions and
Commercial Claims Advocate

**Phone:** (941) 225-8225
**Office:** (941) 932-8535
**Mobile:** (305) 632-2604
**Fax:** (941) 932-8536
**Email:** vince@eliteresolutions.com

**Commercial Claims Advocate &
Elite Resolutions**

www.commercialclaimsadvocate.com
www.eliteresolutionsclaims.com



**Florida LIC** #P121399 | **Texas LIC** #2528285
**California LIC** #2L82947 | **North Carolina LIC** #9777295

On Fri, Jan 17, 2025 at 3:08 PM Vince Perri <vince@eliteresolutions.com> wrote:
  Hey Guys,

**Exhibit E**

 Outlook

---

**Re: Appraisal for Olympic Steakhouse - Umpire Notice and Engagement**

---

**From** Toby Johnson <toby@omegabcs.com>

**Date** Tue 3/18/2025 8:12 AM

**To** Vince Perri <vince@eliteresolutions.com>

**Cc** Abernathy, Ken A. <Kenneth.Abernathy@sedgwick.com>; Ryan@omegaias.com <Ryan@omegaias.com>; elite-2024050052@claimmail.net <elite-2024050052@claimmail.net>; elite-2024050053@claimmail.net <elite-2024050053@claimmail.net>

---

📎 1 attachment (262 KB)

Omega Invoice 24038LF2 - Olympic Steak & Pizza ~ Western World Insurance.pdf;

---

Hi Vince,

I will address all of your concerns in a later discussion; however, my draft award represents what I believed was agreed upon by you and Mr. Abernathy during our site visit. As I recall, you were struggling to find any hail-related damage to the roof of the main building and asked Mr. Abernathy and me to "help" you find something on the roof. Furthermore, it was my understanding that both of you made several concessions in an effort to work amicably together to reach an agreement. Again, I will address this in a more formal response when I issue the final award, but at this point, I just need to know if you are willing to sign the draft award, which was written based on what I understood to be a mutual agreement on-site. If that is no longer the case and you're unwilling to sign the award as drafted, then I will withdraw this draft award and revert to my review and issuance of the award based on the evidence submitted to me.

Regarding my fee, please see emails from 11/12 and 11/17, as the fee structure was outlined and agreed upon. For reference, the terms of my engagement are outlined below.

My fee for this appraisal can be a flat rate or an hourly rate based on the attached fee schedule. The appraisers should review and decide whether they prefer a fixed "not-to-exceed amount" or an "open-ended" hourly rate. If the hourly rate is chosen, I will require a retainer to be paid prior to any site visit. If the flat rate option is chosen, I will not require payment before the site visit but may request a retainer payment after the initial site visit. For either option, my fee will be split equally between both principal parties. If the two appraisers cannot agree on a fee option, the default Hourly Rate (Option 1) will be utilized.

I am willing and able to comply with the court order to have an award recorded within 90 days of the order, or by January 25, 2025. This has become fairly common over the years, and my fee schedule accommodates situations with imposed deadlines. To comply, I need the appraisers to understand that a tight schedule will be required.

By accepting this appointment, both parties (as agreed by their appointed appraiser) agree to make payment to the umpire within 30 days of receipt of the umpire's invoice. For any payment that is not made within thirty (30) days of the due date, the parties shall pay a late fee. The late fee shall equal 3.33% of the unpaid portion of the past-due payment for each month (0.111% daily) the payment is not received, up to the maximum amount permitted by law.

Lastly, I will require my service fee to be paid in full before I render the final award. My signature will not be placed on any award until payment is received from both parties, so please make this a priority with your clients.

**Exhibit F**

Both appraisers agreed to an hourly fee bill, and I issued a retainer based on 40 hours of anticipated work for this matter. Recall that when I was invoked, there was a court-ordered deadline, the dispute exceeded $1.7 million, and I was provided with more than 3,100 pages of material to consider. For the record, I was prepared to issue the award prior to the court's deadline; however, the deadline was not met because I am still waiting to receive payment from the insured.

At this point, because the insured has not issued payment more than 90 days after issuance of my invoice, I am going to pause my work on this matter until I receive payment from the insured. An updated invoice is attached. Once I receive payment from the insured and your response regarding the current draft award, I will continue my work on this matter. Once the final award is issued, I will provide a detailed time sheet for both parties.

**Best Regards,**

**Toby Johnson, APAC, CPAU, CPLAU, HCI-C/R/W, MSR, RIA, XSME**
**Omega Building Consultants**

Principal & Founder

806-438-7457: Cell

731-256-6446: Office

Toby@Omegabcs.com || www.Omegabcs.com

Thank you for choosing Omega Building Consultants

---

**From:** Vince Perri <vince@eliteresolutions.com>
**Sent:** Tuesday, March 18, 2025 7:00 AM
**To:** Toby Johnson <toby@omegabcs.com>
**Cc:** Abernathy, Ken A. <Kenneth.Abernathy@sedgwick.com>; Ryan@omegaias.com <Ryan@omegaias.com>; elite-2024050052@claimmail.net <elite-2024050052@claimmail.net>; elite-2024050053@claimmail.net <elite-2024050053@claimmail.net>
**Subject:** Re: Appraisal for Olympic Steakhouse - Umpire Notice and Engagement

Hi Toby,
After reviewing the appraisal award, I have to say it's discouraging to see that nothing has been accounted for on the roof, despite clear indications of an issue. When we walked on that roof, it was fairly obvious that there was a significant amount of damage. But at every turn, when I tried to point it out, it seemed like I didn't stand a chance, every instance of damage was dismissed as foot traffic, nail pops, or general wear and tear. From the very beginning, I made it clear that we weren't there to determine coverage. We were simply there to assess whether there was damage at all, and there undeniably was. That same roof damage has directly contributed to the extensive interior damage, and while I know the interior is being paid for, it's disappointing that nothing whatsoever is being addressed on the roof, especially when the evidence strongly suggests it was affected by a storm. Given the extent of what we saw up there, it's a shame that not a single repair or replacement has been accounted for in the award.

 Outlook

---

## Re: New payment request from Omega Insurance Appraisals - invoice 25019

---

**From** Ryan Hysmith <ryan@omegaias.com>

**Date** Thu 4/10/2025 8:05 PM

**To** Toby Johnson <toby@omegaias.com>; attorneyberkley@gmail.com <attorneyberkley@gmail.com>; tn.contractor1@gmail.com <tn.contractor1@gmail.com>; Will Jacob <willjacob196@yahoo.com>

**Cc** elite-2024050052@claimmail.net <elite-2024050052@claimmail.net>; eliteresolutions@jobnimbusmail.com <eliteresolutions@jobnimbusmail.com>; elite-2024050053@claimmail.net <elite-2024050053@claimmail.net>; David Farber/William Griffin's Lawyer <dfarber@dfarberlaw.com>; William Griffin <william@griffinlossconsultants.com>

---

📎 1 attachment (326 KB)

Mail - Toby Johnson - Outlook.pdf;

Hi William,

Thank you for promptly reaching out regarding the invoice. I hope the following information provides clarity on the charges and how we've arrived at this point.

On November 12, 2024, Mr. Johnson was notified that the Honorable Judge Breen had appointed him to serve as the umpire. He was also informed that the court had imposed a 90-day deadline for the appraisal to be completed. Mr. Johnson responded the same day, requesting that both appraisers submit their documentation so he could begin his review. In that communication, he outlined his expectations for the process and proposed two billing options: a flat rate or an hourly rate. He also explained that a retainer invoice would be submitted and required prior to the site inspection, and that the full balance of his fee would be due before the issuance of the final award. A copy of this email is attached for your reference.

Both appraisers requested that Mr. Johnson bill on an hourly basis and submitted their documentation for his review, thereby initiating the appraisal process.

On November 27, 2024, Mr. Johnson issued the attached retainer invoice, estimating 40 hours of work based on the volume and complexity of the materials provided. The file included over 3,000 pages of documentation, reflected a valuation gap of more than $1.7 million, and involved two separate claims for distinct perils across multiple buildings.

Although the retainer payment was not processed prior to the site inspection as Mr. Johnson had requested, he agreed to proceed with the inspection out of courtesy to the parties and to adhere to the court's timeline. Throughout the course of the proceedings, Mr. Johnson reminded both appraisers of the outstanding retainer.

Following the inspection, Mr. Johnson prepared a comprehensive draft valuation of the loss based on discussions with both appraisers and promptly shared it for their review.

**Exhibit G**

Over the past five months, Mr. Johnson has diligently performed his role with professionalism and responsiveness. However, to date, the retainer invoice issued in November remains unpaid.

Please note that this is a retainer payment, not a final invoice. Once the retainer is received, Mr. Johnson will continue his work toward the resolution of this matter. Upon completion, a detailed time log will be provided to account for all time expended. The retainer will be applied toward that time. If Mr. Johnson's total time exceeds 40 hours, a final invoice will be issued for the balance. If his time falls below 40 hours, the final invoice will reflect the actual time worked, and any excess retainer will be refunded to the parties.

I hope this clarifies the current situation and the impact that the delayed payment has had on the appraisal process. We trust that the retainer will be remitted promptly so that Mr. Johnson may continue moving this matter forward.

Sincerely,
Ryan Hysmith
Chief Operating Officer
The Omega Group

---

**From:** Will Jacob <willjacob196@yahoo.com>
**Sent:** Thursday, April 10, 2025 3:44 PM
**To:** Toby Johnson <toby@omegaias.com>; Omega Insurance Appraisals <quickbooks@notification.intuit.com>; attorneyberkley@gmail.com <attorneyberkley@gmail.com>; tn.contractor1@gmail.com <tn.contractor1@gmail.com>
**Cc:** elite-2024050052@claimmail.net <elite-2024050052@claimmail.net>; eliteresolutions@jobnimbusmail.com <eliteresolutions@jobnimbusmail.com>; elite-2024050053@claimmail.net <elite-2024050053@claimmail.net>; Toby Johnson <toby@omegaias.com>; David Farber/William Griffin's Lawyer <dfarber@dfarberlaw.com>; William Griffin <william@griffinlossconsultants.com>
**Subject:** Re: New payment request from Omega Insurance Appraisals - invoice 25019

Toby,

Would you mind submitting a more detailed and explanatory invoice to our counsel so we better understand the charges.

Thanks so much and I hope you are doing well.

Your friend, William

[Yahoo Mail: Search, Organize, Conquer](#)

On Tue, Apr 8, 2025 at 3:02 PM, Omega Insurance Appraisals <quickbooks@notification.intuit.com> wrote:

INVOICE 25019

 **Outlook**

---

**Request for Guidance Regarding Unpaid Retainer and Status of Court Ordered Appraisal**

---

**From** Toby Johnson <toby@omegaias.com>

**Date** Tue 5/27/2025 10:57 AM

**To** dberkleylaw@msn.com <dberkleylaw@msn.com>; attorneyberkley@gmail.com
<attorneyberkley@gmail.com>; dfarber@dfarberlaw.com <dfarber@dfarberlaw.com>;
jwatson@carrallison.com <jwatson@carrallison.com>; asjones@carrallison.com <asjones@carrallison.com>;
gigi@dfarberlaw.com <gigi@dfarberlaw.com>; maria@dfarberlaw.com <maria@dfarberlaw.com>

**Cc** Kenneth.Abernathy@sedgwick.com <Kenneth.Abernathy@sedgwick.com>; vince@eliteresolutions.com
<vince@eliteresolutions.com>; elite-2024050052@claimmail.net <elite-2024050052@claimmail.net>; elite-
2024050053@claimmail.net <elite-2024050053@claimmail.net>; Ryan Hysmith <ryan@omegaias.com>

---

📎 1 attachment (539 KB)

11.12.24 Email - Toby Johnson.pdf;

Dear Counsel,

I hope this message finds each of you well.

As you are aware, I was appointed by the Honorable Judge Breen to serve as the neutral umpire in this court-ordered appraisal matter. Prior to beginning any substantive work, I outlined my billing structure in writing to both appraisers, including the requirement for a retainer and an explanation of how time would be tracked and billed. This email was submitted on November 12, 2024, and a copy is attached hereto for your reference. Both appraisers elected the hourly rate option, and the panel proceeded accordingly and without any objections.

To date, the insurer has submitted payment for their portion of the retainer. However, the insured has not remitted payment for their share, despite several reminders issued over the past several months including the communication below. I worked diligently and in good faith throughout this process to honor the court's timeline, but at this point, I must pause all further involvement, including additional analysis, communications, or resolution, until the retainer is fully satisfied. As previously mentioned, this is a retainer payment, not a final invoice. Once both parties have paid their portion, I will resume my work and move the matter toward resolution. Upon completion, I will provide a detailed time log documenting all hours worked. The retainer will be applied against that time. If my total hours exceed the initial estimate of 40 hours, a final invoice will be issued for the balance. If my time falls short of 40 hours, any unused portion of the retainer will be refunded back to the parties accordingly.

Out of respect for the integrity of the appraisal process and the court's appointment, I want to ensure that all parties are treated fairly and that my role as umpire remains neutral, professional, and unencumbered by ongoing payment disputes. With that in mind, I believe it may now be appropriate to seek the court's guidance on how to proceed.

Please let me know your position on how best to address the current situation. I stand ready, willing, and able to complete my duties in accordance with the Honorable Court's instructions.

**Exhibit H**

**Best Regards,**


**Toby Johnson, APAC, CPAU, CPLAU, HCI-C/R/W, MSR, RIA, XSME**

**Omega Insurance Appraisals**

Principal & Founder

806-438-7457: Cell

844-74-OMEGA: Office

Toby@Omegaias.com  ||  www.Omegaias.com
Toby@Omegabcs.com  ||  www.Omegabcs.com


Thank you for choosing The Omega Group

---

**From:** Ryan Hysmith <ryan@omegaias.com>
**Sent:** Thursday, April 10, 2025 8:05 PM
**To:** Toby Johnson <toby@omegaias.com>; attorneyberkley@gmail.com <attorneyberkley@gmail.com>;
tn.contractor1@gmail.com <tn.contractor1@gmail.com>; Will Jacob <willjacob196@yahoo.com>
**Cc:** elite-2024050052@claimmail.net <elite-2024050052@claimmail.net>; eliteresolutions@jobnimbusmail.com
<eliteresolutions@jobnimbusmail.com>; elite-2024050053@claimmail.net <elite-2024050053@claimmail.net>;
David Farber/William Griffin's Lawyer <dfarber@dfarberlaw.com>; William Griffin
<william@griffinlossconsultants.com>
**Subject:** Re: New payment request from Omega Insurance Appraisals - invoice 25019

Hi William,

Thank you for promptly reaching out regarding the invoice. I hope the following information provides
clarity on the charges and how we've arrived at this point.

| | | | | |
|---|---|---|---|---|
| Routing & Transit | 061100606 | | Amount | **$9,000.00** |
| Check Number | 365889 | | Sequence Number | 21200070 |
| Account Number | 1060100131 | | Capture Date | 03/05/2025 |
| Trancode | 0 | | Pocket Number | 02 |



**CARR ALLISON**
100 Vestavia Parkway
Birmingham, AL 35216
205-822-2006

**SYNOVUS**
Synovus Bank, Member FDIC
64-60/811

365889

02/28/2025

PAY    Nine thousand and 00/100 Dollars \*\*\*      $ \*\*9,000.00\*\*
NOT VALID AFTER 180 DAYS

TO
THE
ORDER
OF
    Omega Insurance Appraisals
Attn: Toby Johnson
31 Northhaven Dr.
Jackson, TN 38305

AUTHORIZED SIGNATURE

⑆365889⑈ ⑉061100606⑉ 001060100131⑈



3/5/2025  0005  0261
CTURNER  6

Community Bank 0000000006
>284373760<
03/06/2025 - Drawer 0261
03/05/2025  11:02 AM

Community Bank

CHECK HERE FOR MOBILE OR REMOTE DEPOSIT ONLY
DATE 3/5/25
Acct: 96313



**Community Bank**

## Exhibit I

*The image(s) shown above represent official copies of original documents processed by our institution.*