| | |
|---|---|
| **WILLIAM SAVEH D/B/A OLYMPIC STEAKHOUSE,** | |
| **Plaintiff,** | **Case Nos: 1:21-cv-02373-JDB-jay** |
| v. | **1:23-cv-02191-JDB-jay** |
| **WESTERN WORLD INSURANCE COMPANY,** | |
| **Defendant.** | |

## DECLARATION OF JOHN C. ROBISON

This will serve as my Declaration with attached exhibits in support of Mr. Toby Johnson's Response in Opposition to Plaintiff's Motion to Set Reasonable Umpire Fee for Court Appointed Appraisal Umpire Toby Johnson (D.E. 111.)

I.     ASSIGNMENT AND SCOPE OF REPORT

I was retained in the above-captioned matter on or about June 27, 2025 to review certain materials (as listed below) and based upon my background, experience, expertise and education to provide my professional opinion thereof in the matter of the "Memorandum Of Law In Support Of Motion To Set Reasonable Umpire Fee For Court Appointed Umpire Toby Johnson And For Other Relief".

Attached to this report as Exhibit I, is my current curriculum vitae. As is set forth in Exhibit I, I have been an active participant in the Alternative Dispute Resolution process of Appraisal as an appraiser and as an umpire for more than 25 years. The daily operations of Alternative Dispute Resolution are performed through my Company, The CSI Group, LLC, to which I am the Founder.

I am further the Founder and Head Educator of The Property Loss Appraisal Network ("P.L.A.N."), which is one of three nationally recognized organizations in the country to provide education on the process of appraisal and certification to both appraisers and umpires. P.L.A.N. is accredited in approximately 25 of the 50 United States through the various Departments of Insurance as a certifying body for Appraiser & Umpire Certification as well as a provider of Continuing Education Credits for Insurance Adjusters and Public Adjusters.

I am considered a subject matter expert on the appraisal process and am a frequent speaker with respect to these topics outside of our numerous certification conferences for both appraisers and

**Exhibit 2**

umpires and have regularly been invited to make presentations at public and private events for both Insurer and Policyholder representatives and organizations.

Also presented in Exhibit I, is a list of my assignments as expert, appraiser, and umpire, which also delineates my testimony and experience as an expert witness. The agreed upon compensation is $475.00 per hour plus any costs incurred. No invoice has yet been prepared or presented.

## II. DOCUMENTS AND MATERIALS REVIEWED

While reaching my conclusions and opinions, I reviewed and relied upon the following materials provided to me through:

- A. DE 111 Memorandum Of Law In Support Of Motion To Set Reasonable Umpire Fee For Court Appointed Umpire Toby Johnson And For Other Relief. (which includes the following exhibits)
    1. Panel Email Chain
    2. Johnson Retainer Invoice
    3. Canon Of Ethics For P.L.A.N. Certified Umpires
- B. DE 111 Motion To Set Reasonable Umpire Fees
- C. DE 113 Request For Status Report Post Injury
- D. DE 114 NOF Affidavit of David Herring
- E. Canon of Ethics for P.L.A.N. Certified Appraisers
- F. Canon of Ethics for P.L.A.N. Certified Umpires
- G. WIND Appraiser Code Of Ethics
- H. WIND Umpire Ethical Rules
- I. IAUA Code Of Ethics

## III. PROFESSIONAL OPINIONS

A. **In Response to the *PLEADINGS* of David S. Farber, Attorney For The Plaintiff Seeking Relief, I provide the following:**

**PLEADING 1:**

Regarding Pleading 1, I have no opinion to provide as dependent upon circumstances this activity appears to be standard for these types of proceedings.

**PLEADING 2:**

Regarding Pleading 2, I have no opinion to provide as dependent upon circumstances this activity appears to be standard for these types of proceedings.

## PLEADING 3:

Regarding Pleading 3, This appears to be a standard appraisal clause similar to that of a 165-line policy except for the lack of directive language as to the requirements of serving as umpire.

## PLEADING 4:

Regarding Pleading 4, Mr. Farber is correct in his comment that "Nowhere in the above-stated Appraisal Provision does it require an advance payment to the Umpire before his Appraisal Award is rendered", however the plaintiff fails to recognize that the policy also does not provide specificity as to how and by whom their requirements are to be presented to the responsible parties. With this ambiguity it has been the recognized, standard and customary protocols for the umpire to present their requirements to the appraisers to have them deliver them to their respective principals

No one can deny that retainers, payment schedules and requirements are a recognized and accepted standard in the professional areas of litigation and alternative dispute resolution unless one is working on a contingency basis, and; further, the usage of contingency based billing in appraisal and especially as an Umpire is never appropriate and may be deemed against the law in many states.

While the standard operating procedures may differ from professional to professional, these procedures and requirements along with any objections thereto should be brought forth at the onset of a professional engagement to eliminate confusion and billing issues of third-party beneficiaries to the policy that are serving in good faith.

## PLEADING 5:

Regarding Pleading 5, The email sent by Mr. Johnson appears by all means and purposes to be an appropriate and Non Ex-Parte communication to the panel outlining both his desired critical path of coordination to accomplish an end by resolution to the appraisal dispute as well as outlining his billing, final payment and award requirements.

As a common recognized procedure and to avoid undue interaction with the principal parties, the umpire uses the appraisers as a conduit to present their requirements and requests to the respective principal parties. This eliminates potential communicative attempts to sway the process or have the principal parties interject into the process.

## PLEADING 6:

Regarding Pleading 6, As a common practice the information provided by the umpire to the appraisers for consideration or action by the principal parties is the responsibility of the appraisers to assure that their principals are aware of any requirements or requests so that they can be addressed immediately.

Failure by an appraiser to execute their expected duties of providing requests or requirements of the umpire to their respective principals is not the fault of the umpire but exhibits one or all of four manners of behavior by the appraisers and or principal parties

1. Directing or being directed to silence of the matter pending the outcome of the award.

2. Lack of competence in the process.

3. Negligence of the process.

4. Deliberate nefarious behavior towards the process.

## PLEADING 7:

Regarding Pleading 7, It is difficult to understand what Mr. Farber means or considers a "relatively simple insurance appraisal proceeding". However, in this specific instance I am aware of their being over 3000 pages of documents and a nearly 1.7 Million Dollar delta spanning numerous commercial buildings. at the onset.

To review, absorb, understand, extrapolate and potentially research the validity of these documents as well as the performance of site inspections along with deliberations of the appraisal panel would be extremely intensive to ascertain a true understanding of the dispute and a final resolve regardless of the final amount of an award.

As to the mention of the requirements of Mr. Johnson being unsupported by agreement, this falls upon the appraisers to provide the umpire requirements to their respective principals and, if as alleged that the Appraiser for the policyholder for whatever reason did not, it again shows that the appraiser was acting in either a manner of incompetence, negligence or deliberateness in their expected duties to the panel.

It would appear by the silence of the insured and the direct and immediate payment of the insurer that Mr. Johnson was unaware of any type of issues or concerns relating to his invoicing and continued in good faith to perform his duties as umpire.

Further, and with the insureds appraiser's alleged own knowledge that he had or had not presented Mr. Johnson's requirements to his respective principal it would appear that the appraiser's actions were at a minimum questionable and potentially deliberate by continuing the process with this knowledge and not presenting any type of objection(s) to Mr. Johnson of his requirements.

While I said it is difficult to understand what the Mr. Farber means or considers a "relatively simple insurance appraisal proceeding", however it is (with emphasis) easy to understand why Mr. Farber is attempting to downplay the complexities of this specific insurance appraisal.


## PLEADING 8:

Regarding Pleading 8, Again, in this specific instance I am aware of their being over 3000 pages of documents and a nearly 1.7 Million Dollar delta spanning numerous commercial buildings. at the onset.

To review, absorb, understand, extrapolate and potentially research the validity of these documents as well as the performance of site inspections along with deliberations of the

4

appraisal panel would be extremely intensive to ascertain a true understanding of the dispute and a final resolve regardless of the final amount of an award.

I do not see any type of concessional or additional fee structures presented by Mr. Johnson in this regard.

## PLEADING 9:

Regarding Pleading 9, Again, as a common practice the information provided by the umpire to the appraisers for consideration or action by the principal parties is the responsibility of the appraisers to provide to their respective principals to assure that their respective principals are aware of any requirements or requests so that they can be addressed immediately.

Failure by an appraiser to execute their expected duties of providing requests or requirements of the umpire to their respective principals is not the fault of the umpire but clearly exhibits one or all four manners of behavior by the appraisers and or the principal parties.

    1. Directing or being directed to silence of the matter pending the outcome of the award.

    2. Lack of competence in the process.

    3. Negligence of the process.

    4. Deliberate nefarious behavior towards the process.

It would appear by the silence of the insured and the direct and immediate payment of the insurer that Mr. Johnson was unaware of any type of issues or concerns relating to his invoicing and continued in good faith to perform his duties as umpire.

Further, and with the insureds appraiser's alleged knowledge that he had not presented Mr. Johnson's requirements to his respective principal, it would appear that the appraiser's actions were questionable and at a minimum potentially deliberate by his continuing the process with this knowledge and not presenting any type of objection(s) to Mr. Johnson of his requirements.

What truly appears to be suspect is not Mr. Johnsons invoicing but rather the fact that Mr. Johnson did indeed present his requirements (Exhibit A within the Plaintiff Pleading) to the panel for disbursement to their respective principals and while one of the appraisers did follow through and their principal did accept and acknowledge, the other did not, and yet had the process continue without dispute.

## PLEADING 10:

Regarding Pleading 10, Again, in this specific instance I am aware of their being over 3000 pages of documents and a nearly 1.7 Million Dollar delta spanning numerous commercial buildings. at the onset.

To review, absorb, understand, extrapolate and potentially research the validity of these documents as well as the performance of site inspections along with deliberations of the

appraisal panel would be extremely intensive to ascertain a true understanding of the dispute and a final resolve regardless of the final amount of an award.

I would see no question that at a minimum there would be approximately 40 hours expended on this appraisal and would anticipate and consider a retainer of 20 hours per side as a fair and reasonable assumption of financial responsibility of the principals to the umpire serving in good faith as a third-party beneficiary to the policy.

## PLEADING 11:

Regarding Pleading 11, In review of the Affidavit of Mr. David Herring, I have ironically noted that he states:

*"The scope and time required to resolve each matter is variable and cannot be known in advance."*

While Mr. Herring also states that he does not require prepayment of his services, that is a professional decision he has made for his organization and is not a stipulated, mandated, or governed business operation that all must do or even follow.

In fact in the recent market, more and more umpires and appraisers, but specifically umpires are requiring some sort of retainage as a guarantee of payment as many umpires after making a decision on an award are not paid for weeks, months, and in some cases that I have been made aware of, years before they are paid or have to sue for their fees. In greater fact, as Mr. Herring is an online influencer I have seen numerous "reels" and "videos" produced by him in which he talks in great detail about umpires, himself included, not being paid for lengthy periods of time if at all. In one of his "reels" even gloating about "Finally Winning" to receive his umpire payment.

I believe Mr. herring would agree that "Appraisal" is designed to end disputes and not to create new disputes. With that same premise, I believe Mr. Herring would further agree those that serve in the roles of appraisers and umpires while working to end a dispute in a good faith manner do so with the same intent of not having to dispute or appraise their fees at the end of the process.

To support this and again while reviewing the Affidavit of Mr. Herring, I noted that in his illustrative insert named "umpire Comparrions.xlsx" he references one particular appraisal "Aaron Penn-Backstreets Sports Bar. I mention this as I am not only familiar with Mr. Penn but also with the Public Adjuster whose claim this was.
While Mr. Herring does not specifically speak of holding awards in his affidavit, I provide context of an email I was made privy to in which Mr. Herring states as a result of nonpayment:

*"Your carrier will be notified of nonpayment which is in direct violation of their appraiser/umpire policy **and will result in the award being held** or payment cancelled until we are properly compensated."*

It would appear by this communication that Mr. Herring indeed requires payment before an award is released. This is also being mentioned to establish the credibility of the affiant, Mr. Herring.

6

While Mr. Herring illustrates fees against awards in his affidavit, he does so by referencing the final award amount and not the original dispute deltas, nor does he express the various complexities, voluminous documents or anomalies or even the lack thereof that can make a "relatively simple insurance appraisal proceeding" a complete nightmare of time consumption.

While Mr. Herring often boasts in his social media blitz's that he works with velocity in mind and will have awards out in 24-72 hours, if we take this specific appraisal with over 3000 pages of documents and multiple locations as an example, he would either be a really fast reader, or he would be leaving out the reality for influencer purposes, or he would be blatantly overlooking documents which would effect the outcome of the appraisal and potentially damage the parties to the dispute.

## PLEADING 12:

Regarding Pleading 12, As for the document reviewed and marked as Exhibit B in the pleadings of Mr. Farber it is my opinion and as clearly stated on the document to be a retainer and not a final invoice. A retainer could not have a complete breakdown of all charges as a retainer is an assumed calculation of anticipated fees and not a culmination of actual expenses. The premise of a retainer is to secure an amount in which the party believes his total billings may be. Further it is my understanding that if any additional fees would have been assessed against the initial retainer a progress or replenishment invoice would have been submitted by Mr. Johnson. Conversely, it is also my understanding that if any portion of the retainer was not used, the balance would be refunded in equal portions to the principal's. This is a standard, customary and widely recognized procedure for billing purposes, and I would imagine that unless Mr. Farber is representing on a contingency basis that he fully understands the usage and validity of retainage procedures.

## PLEADING 13:

Regarding Pleading 13, In review of the passive allegations of Mr. Farber that Mr. Johnson is charging unreasonable, unexplained, or open-ended fees I strongly disagree that this is the instance as Mr. Johnson had merely presented a retainer of services which by all standards is followed by a full and comprehensive breakdown of actual hours and expenses that may have been expended during the course of engagement.

In review of the Affidavit of Mr. David Herring, I have ironically noted that he states:

*"The scope and time required to resolve each matter is variable and cannot be known in advance."*

I am certain that Mr. herring would agree that as an Umpire one has an obligation to disclose not only their fee structures but also and most important is the overall expected financial exposure that the principals would expect for their services. In doing this as long as Mr. herring professes, I am further certain that Mr. herring can estimate by a cursory review of information how long his umpire services would take thus presenting a budget with a small plus or minus variance so that the responsible parties are not surprised at the end.

While Mr. Herring also states that he does not require prepayment of his services, that is a professional decision he has made for his organization and is not a stipulated, mandated, or governed business operation that all must do or even do follow.

In fact in the recent market, more and more umpires and appraisers, but specifically umpires are requiring some sort of retainage as a guarantee of payment as many umpires after making a decision on an award are not paid for weeks, months, and in some cases that I have been made aware of, years before they are paid or have to sue for their fees. In greater fact, as Mr. Herring is an online influencer I have seen numerous "reels" and "videos" produced by him in which he talks in great detail about umpires, himself included, not being paid for lengthy periods of time if at all.

It is apparent that the requirements of Mr. Johnson were received by the appraisers as evidenced by the reported payment from the insurer for their portion.

If there was a dispute by the policyholder as to the amount or timing of the retainer requirement or amount, it should have been made by them at the immediate instance in which it was presented by the umpire. Not doing so can only be attributed to the principal party and or the appraiser performing in one or all four manners of behavior.

1. Directing or being directed to silence of the matter pending the outcome of the award.

2. Lack of competence in the process.

3. Negligence of the process.

4. Deliberate nefarious behavior towards the process.

The further allegations of Mr. Farber that Mr. Johnson was charging an unapproved amount and withholding an award violates the policy, I remind you that as in Mr. Farber's Exhibit A, Mr. Johnson did indeed present both his standard operating procedures, expectations and requirements of payment and the award to both appraisers. Again, the appraisers are the conduit of the umpire to provide administrative information and requirement. Again, the alleged failure of the appraiser to present these administrative procedures, expectations, and requirements of Mr. Johnson to their respective principals can only be explained by one of four manners of behavior by the principals and or the appraisers:

1. Directing or being directed to silence of the matter pending the outcome of the award.

2. Lack of competence in the process.

3. Negligence of the process.

4. Deliberate nefarious behavior towards the process.

As for the allegation that Mr. Johnson's protocols, procedures, and requirements violate the insurance policy' and while not having a copy of the specific governing policy of insurance in this instance, I have reviewed several common market policies for this purpose and with the intent of

8

finding such alleged violations and have by extensive review found no language which supports Mr. Farber's allegations.

However, and in fact, the only violation of the policy found in this instance is that a direct party to the policy is not abiding by the legal binding contractual language within the specific appraisal clause as referenced below.

"b. Bear the other expenses of the appraisal and umpire equally."

## PLEADING 14:

Regarding Pleading 14, The LinkedIn post by Attorney Steven Badger, this is always a hot topic of discussion during our P.L.A.N. Certification conferences to which Mr. Badger and Mr. Merlin frequently participate as keynote speakers. In this instance, Mr. badgers post related to a certain sliding fees schedule being used by a group out of the New Orleans area. P.L.A.N. spends time ad nauseum instilling to the attendees that "The Cost of Services Needs to Equal The Value of Services".

However, in review of Mr. Herring's own resume, he also uses a sliding scale for appraisal services.

Further, in review of Mr. Herrings Affidavit it appears that his own charges as umpire were right at 20% of the final award, which by all measures would be more than excessive. (David Neal).

However, in his Affidavit, Mr. Herring illustrates two appraisal umpire fees that by the amount of loss stated seem to be much in line with the umpire fees of Mr. Johnson that were the catalyst for these pleadings (Christopher Floyd, Las Brisas)

## PLEADING 15:

Regarding Pleading 15, With the delivery of Mr. Johnson's requirements to the panel outlining his office's procedural standards and requirements as per Mr. Farber's Exhibit A. I find that Mr. Johnson had and has sufficiently described to the panel that payment is required prior to releasing of the award, and with the acceptance of terms by the insurer and the silence of the insured to dispute these requirements, Mr. Johnson continued in good faith under his expressed requirements and was not and did not withhold the award under malice or malicious intents to damage or harm either party but was and is simply operating under his outlined and expressed procedural requirements.


## PLEADING 16:

Regarding Pleading 16, As the Founder of the P.L.A.N. organization, I can attest that Mr. Johnson was involved with P.L.A.N. far above and beyond his certifications of Appraiser & Umpire by providing a supportive role in the presentation, lectures and curriculum of the

certifying courses, as well as administering and proctoring of the certification exams from a period of 2019 through 2023. That being said I am more than confident that Mr. Johnson is extremely familiar with not only what expected behaviors and practices are demanded of P.L.A.N. certificant's not only in the course offerings but most importantly the Canon of Ethics for P.L.A.N. Certified Appraisers as well as the Canon of Ethics for P.L.A.N. Certified Umpires. The Certifications for Appraiser and or Umpire are valid for a three-year period from the certification date and certificant's must reattend the program to renew their certification(s).

As the Founder of the P.L.A.N. organization, I can attest that Mr. Johnson has been certified through P.L.A.N. as both Appraiser and Umpire and through his certifications is held to the same thresholds, standards of procedural conduct, and review thereof while presenting himself to the public as either a P.L.A.N. Certified Appraiser or Umpire. Mr. Johnsons last certification(s) through P.L.A.N. were obtained in October of 2022 and are valid through October of 2025.

While I am sure that being based in Florida Mr. Farber is aware that there are also two other organizations, The Insurance Appraisal and Umpire Association ("IAUA"), and The Windstorm Insurance Network ("WIND"), (collectively the "Organizations") both also Florida based and both that provide Certification for Appraisers and Umpires, and both that also provide unique and individual codes and canons of ethics to which their certificant's must adhere.

While the Organizations all have variants in their unique cannons, codes of conduct, and ethics, they are all similar in their intent of promoting and enforcing on those certified through these organizations fairness in the process, fairness to the panel, and ultimately fairness to the disputing principal parties of the governing contract of insurance (the "Policy").

While the Organizations implement and impose their unique yet similar cannons, codes of conduct, ethics, standards and customs (the "Rules") upon those who wish to be certified through the Organizations, and while the Organizations strive to have these Rules adopted as a recognized protocol of all those that serve in the role of appraiser or umpire; neither the Organizations themselves nor their certified members have the authority to impose a sanction or punish non-certified members that do not follow these, and that are not bound by the Rules of any of the Organizations.

Certified by the Organizations or not, each individual participating in the process of appraisal does so under the administration of governing Policy language within the specific appraisal clause as well as in accordance with jurisdictional laws, statutes, court rulings, and/or court mandates. Ultimately, the laws of each jurisdiction control what appraisers and umpires can and cannot do in appraisal.

While there is little governing authority, case law, statutes, and contractual policy language regulating appraisal itself and especially the allegations set forth in the court pleadings of Mr. Farber regarding the billing and award procedures and protocols of Umpires;

organizations such as The Property Loss Appraisal Network (P.L.A.N.), The Insurance Appraisal and Umpire Association ("IAUA"), and The Windstorm Insurance Network ("WIND"),

(collectively the "Organizations"), all of which provide training, education, and certification to individuals who serve in one or more roles of property loss appraisers and/or property loss umpires, each has created and promulgated, enacted, and enforced certain rules, ethical guidelines, codes of conduct, expected behavior, and practices upon those certified by these Organizations. Certified individuals are also expected and required to uphold these standards.

While I am unclear as to why a broader look into both certification and conduct wasn't performed relating to the allegations against Mr. Johnson's billing, if Mr. Farber had expanded his search he would have found that while Mr. Johnson is certified through P.L.A.N., Mr. Johnson *is* also certified through IAUA, but Mr. Johnson is *not* certified through WIND.

Ironically, and in further research, I have found that Mr. Vince Perri the appraiser for the policyholder, Mr. Ken Abernathy the appraiser for the insurer, and the affiant Mr. David Herring *are not* certified through either P.L.A.N., IAUA, or WIND.

Noting that Mr. Johnson *is not* certified through WIND, if Mr. Farber had broadened his search, he would have found that the only certifying organization that speaks to the holding of an award against payment is an organization to which Mr. Johnson is not a certificant. Even so, at the onset of his engagement, Mr. Johnson presented his requirements, procedures and protocols to the panel which were apparently received acknowledged and agreed to by the carrier but ironically not by the policyholder.

Noting that Mr. Johnson is *not* certified through WIND if Mr. Farber is attempting to hold Mr. Johnson liable for not following the conduct rules of WIND relating to the release of an award; should then Mr. Perri, who allegedly did not provide his principal party the key administrative requirements be held to the same standards?

In saying this I present the following WIND Canons for their appraisers

### THE APPRAISER SHALL

*4. At the outset of the appraisal process, inform his or her client about the process, potential outcomes, and potential costs of the appraisal process.*

*5. Provide the umpire with the name, address and contact phone number for the person directly responsible for payment of the invoice. Confirm in writing any fee arrangement with the party who retained the appraiser*

*7. Have full authority to reach an agreement and execute the Award without consulting with his or her respective client.*

*12. Make decisions in a just, independent and deliberate manner with utmost integrity.*

*13. Decide all issues submitted for determination regarding the amount of loss.*

*14. Decide all matters justly, exercising independent judgment and utmost integrity, and not permit pressure from outside the appraisal process to affect the decision.*

## THE APPRAISER SHALL NOT

*5. Delegate the duty to decide to any other person.*

*6. Advise any party or its representative about the status of any substantive issues (i.e. – estimates of damages) while the appraisal process still is pending*

For convenience Attached hereto are the following:

EXHIBIT II:  P.L.A.N. CANON OF ETHICS FOR APPRAISERS
EXHIBIT III: P.L.A.N. CANON OF ETHICS FOR UMPIRES
EXHIBIT IV: IAUA CANON OF ETHICS FOR APPRAISERS
EXHIBIT V:  WIND CANON OF ETHICS FOR APPRAISERS
EXHIBIT VI: WIND CANON OF ETHICS FOR UMPIRES

In review of the allegations that Mr. Johnson had and or has violated certain P.L.A.N. Canon of Ethics within this specific appraisal and more specifically

*9. P.L.A.N. Certified Property Loss Umpires (CPLU) will disclose their fee schedules, retainer requirements, and or payment arrangements prior to accepting the position of Umpire.*

As the founder of P.L.A.N. and the head of the Grievance Committee I have reviewed the information provided along with all exhibits and have found nothing that would suggest or allude to Mr. Johnson violating Canon 9 of the P.L.A.N. Canon of Ethics for Umpires.

However, while Mr. Johnson was court appointed and did not have the usual luxury of discussing certain protocols with the appraisers prior to being nominated; in review of all information provided along with all exhibits and specifically Exhibit A from Mr. Farber I find that Mr. Johnson did indeed present and disclose his proposed fee schedule, retainer requirements, and or payment arrangements

*13. P.L.A.N. Certified Property Loss Umpires (CPLU) shall act in a manner of expedience, due diligence, and fairness in the performance of their duties in the appraisal process.*

Again, and as the founder of P.L.A.N. and the head of the Grievance Committee, I have reviewed the information provided along with all exhibits and have found nothing that would suggest or be alluded to Mr. Johnson violating Canon 13 of the P.L.A.N. Canon of Ethics for Umpires. In fact, and again in the specific review of Exhibit A from the pleadings of MR. Farber, I find that Mr. Johnson did lay out to the appraisers his Critical Path of Coordination to not only establish protocols but also expeditiousness of the process. If those protocols, Paths of coordination, and expeditiousness were ignored by either principal party and or their respective appraiser the fault would again fall upon them for one or all four of the following manners of behavior.

1. Directing or being directed to silence of the matter pending the outcome of the award.

2. Lack of competence in the process.

3. Negligence of the process.

4. Deliberate nefarious behavior towards the process.

By all appearances Mr. Johnson continued in a manner of good faith, neutrality, confidence and trust in and of the panel.

15. *P.L.A.N. Certified Property Loss Umpires (CPLU) understand the need to abide by the highest standards of ethics and professionalism for both the industry and the network to which they are members and swear to uphold these standards and demand it of others within their appointments as Umpire.*

And again, and as the founder of P.L.A.N. and the head of the Grievance Committee, I have reviewed the information provided along with all exhibits and have found nothing that would suggest or allude to Mr. Johnson violating Canon 15 of the P.L.A.N. Canon of Ethics for Umpires. In fact, and again in the specific review of Exhibit A from the pleadings of MR. Farber, I find that Mr. Johnson did express to the panel his requirements of expected professionalism of the panel wherein he also states specifically:

*"I look forward to working with you both in a continued professional and amicable manner to bring a fair and equitable resolve to this Appraisal."*
If the professional protocols, requests and requirements were ignored by either lack of competency, negligence, or deliberate behavior towards the process by the appraisers, the onus would fall upon the appraiser and not Mr. Johnson as the umpire.

17. *P.L.A.N. Certified Property Loss Appraisers are not and cannot act serve or perform as advocates for either party of the appraisal and cannot act serve or perform as a third appraiser and must maintain a position of neutrality throughout the process.*

Again, and as the founder of P.L.A.N. and the head of the Grievance Committee, I have reviewed the information provided along with all exhibits and have found nothing that would suggest or allude to Mr. Johnson violating Canon 17 of the P.L.A.N. Canon of Ethics for Umpires. In fact, it is my understanding that Mr. Johnson worked equally with both appraisers to obtain an agreed-to award that was to be signed by the entire panel, but then suddenly and mysteriously the appraiser for the policyholder withdrew his commitment to execute the award for reasons unknown.

23. *P.L.A.N. Certified Property Loss Umpires (CPLU) understand that their actions affect the lives and businesses of the people they serve, on every claim, and swear to have respect for that power and conduct themselves in a manner that will not intentionally harm those whom they serve.*

And again, and as the founder of P.L.A.N. and the head of the Grievance Committee, I have reviewed the information provided along with all exhibits and have found nothing that would

suggest or allude to Mr. Johnson violating Canon 23 of the P.L.A.N. Canon of Ethics for Umpires. In fact, the review shows that Mr. Johnson acted in a manner of good faith, integrity, and neutrality to the process and the participants.

24. *P.L.A.N. Certified Property Loss Umpires (CPLU) swear to perform their duties without bias or prejudice and uphold the ethical standards, behavior, and authority within their position and will not jeopardize themselves or the proceedings for personal financial gain or intentional harm to others.*

Again, and as the founder of P.L.A.N. and the head of the Grievance Committee, I have reviewed the information provided along with all exhibits and have found nothing that would suggest or allude to Mr. Johnson violating Canon 24 of the P.L.A.N. Canon of Ethics for Umpires.
In fact, the review shows that Mr. Johnson acted in a manner of good faith, integrity, and neutrality to the process and the participants.


IV    CONCLUSION:

From my review of the materials and based upon my experience with the appraisal process – as an appraiser and umpire – and also in my role as a frequent instructor on appraisal proceedings, I find nothing as presented that would represent any type of inappropriate, billing practices by Mr. Johnson. Further I find nothing as presented that would illustrate inappropriate or harmful umpire protocols or actions being practiced by Mr. Johnson. Further I find Mr. Johnson appears to have conducted himself and communicated his requirements with professionalism, fairness, good faith, and neutrality and has not as suggested by Mr. Farber violated the policy and has not violated the Canons of Conduct of P.L.A.N.

By all appearances Mr. Johnson continued in a manner of good faith, neutrality, confidence and trust in and of the panel and the principal parties of the policy.

However, and by appearance, what I have found is perhaps a seemingly consorted effort to withhold payment of Mr. Johnson's umpire requirements pending the outcome of the award through one or all four of the following manners of behavior of the respective principal party and or their respective appraiser.

   1. Directing or being directed to silence of the matter pending the outcome of the award.

   2. Lack of competence in the process.

   3. Negligence of the process.

   4. Deliberate nefarious behavior towards the process.


   I understand that there may be additional discoveries yet to be completed and additional information that may be provided in this case. Accordingly, the opinions expressed herein are

subject to change or modification, based upon the results of any further investigation and future discovery being completed in this case.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on 9th day of July, 2025.

_____
**JOHN C. ROBISON**

# Professional Curriculum Vitae

**John C. Robison**
401 East Main Street, Canton, GA 30114
Office: 404-937-3994  /  Cellular: 404-386-2496
Email j.robison@csigroupna.com
1-844-CSI-INFO (1-844-274-4636)
www.csigroupna.com



To whom it may concern,

Please find the Professional Curriculum Vitae of Mr. John C. Robison.
Mr. Robison has over (40) forty years' experience within the Construction Industry and began his career in the areas of Insurance, Insurance Restoration, Building Consulting and Alternative Dispute Resolution in 1997.
In 2005, Mr. Robison Founded The CSI Group, and since then has specialized in providing impartial, third-party support and dispute resolution to the Insurance and Construction Industries, as well as Individual Property Owners.

Mr. Robison is considered a Subject Matter Expert on Appraisal and is the Founder and Head Educator of the Appraiser & Umpire Certification Programs provided by The Property Loss Appraisal Network P.L.A.N., and to which over 800 industry professionals have been certified through this program since 2017.

Mr. Robison has also provided, and served, by both mutual acceptance and Court Appointments, as Appraiser, Umpire and Arbitrator on numerous large commercial and residential claims. Mr. Robison is also Registered with The Georgia Supreme Court Commission on Dispute Resolution as a Civil Mediator and Arbitrator. John has extensive experience resolving disputes via Arbitration clauses where the laws of non-domiciled states are applied, and has always completed these services with a positive, expeditious and amicable resolve.

Through his vast and well-versed resources of knowledge, experiences and expertise within the Disaster Restoration, Construction, and Insurance Industries; Mr. Robison has provided extensive commercial and residential sales, estimating, project management, and labor support on numerous multi-million-dollar projects. Mr. Robison has extensive experience with Xactimate estimating software and provides accurate cost estimations and damage evaluation reports for large commercial, industrial, multifamily losses as well as small residential claims.

With his personal demand for honesty and integrity, and his expectation of the same by others, combined with Mr. Robison's driving force to provide exceptional services, John has earned a strong respect within the industry as well as within his specialized field of services.

John holds numerous certifications and court recognitions and has performed numerous Appraisals and Umpire services. Throughout his career, Mr. Robison has been involved as both Appraiser, Umpire and as an Expert in the Alternative Dispute Resolution Process of numerous Insurance Claims Disputes involving both Property Losses, High End Contents & Personal Property Damages, Business Personal Property Damages, Loss of Use & Additional Living Expense Losses, Business Interruption, Co-Insurance Penalties, Depreciation and Diminution of Value Calculations ranging from $2,500.00 to in excess of $75,000,000.00.
In the past 35 years in the Industry Mr. Robison has presided as Umpire on well over 2500 Appraisals, and has performed the duties of Appraiser on well over 2800 Appraisals both for the Insurer's and The Insured's.

**Exhibit I**

# Professional Curriculum Vitae

**John C. Robison**

401 East Main Street, Canton, GA 30114
Office: 404-937-3994 / Cellular: 404-386-2496
Email j.robison@csigroupna.com
1-844-CSI-INFO (1-844-274-4636)
www.csigroupna.com

**2014 - Present    Property Loss Appraisal Network (P.L.A.N.) www.theplanonline.org**
**An Organization providing training and educational & certification programs to Professional Insurance Loss Dispute Resolution Providers for the Continuation of Education within in the industry.**
**Mr. Robison is the Founder, Executive Director & Head Educator**

- Providing numerous Training and Educational Programs and Seminars relating to Appraisal, Expert Witness and ADR solutions
- Currently providing Property Loss Appraiser and Property Loss Umpire Training and Certification Programs
- Providing courses that engage each student in interactive education, training, and certification programs.
- Presenting current issues affecting the Insurance Claims Industry.
- Promoting fellowship from all professional sectors of the Insurance Claims Industry.
- Accredited Certification Program recognized by Departments of Insurance and Departments of Financial Services in approximately 25 of the 50 Unites States as a provider of Continuing Education to Adjusters and Public Adjusters.

**2005 – Present    The CSI Group, LLC - Atlanta, GA**
**Consulting Services International / Catastrophe Solutions International**
**Mr. Robison is the President of National Operations / Chief Operating Officer**

- Job Costing / Cost Engineering / Budgeting
- Cost estimation for repairs of High-Rise Resorts / Condominiums, Retail Commercial and Industrial Facilities and Multi / Single Family Dwellings
- Compiling complete on-site damage and repair assessments and cost estimations of repairs of catastrophic structural damages.
- Directly assist Insurance Adjusters, Public Adjusters, Plaintiff & Defense Counsel, Property Owners and Contractors with Catastrophic Loss Assessments and Construction Dispute Settlements while assuring that each estimate conforms to all applicable State, Local and National Code Requirements
- Audit Contractor, Carrier, and Policyholder estimates and material pricing in regard to each specific project and scrutinize the competency of their estimates.
- Disaster Restoration Emergency Services Coordination and Support
- Appraisals / Umpire Services / Arbitration and Mediation Services, Cost Consulting involving both Property Losses, High End Contents & Personal Property Damages, Business Personal Property Damages, Loss of Use & Additional Living Expense Losses, Business Interruption, Co-Insurance Penalties, Depreciation and Diminution of Value Calculations
- Expert Witness and Testimony

**2005 – 2006       Mr. Robison served as Freelance Construction Consultant & Freelance Contractor throughout the Gulf Coast and Nationally while forming The CSI Group, LLC**

- Cost estimation for repairs of High-Rise Resorts / Condominiums, Retail Commercial and Industrial Facilities and Multi / Single Family Dwellings
- Compiling complete on-site damage and repair assessment and cost estimation of repairs of catastrophic structural damages.
- Directly assisted Insurance Adjusters as Building Consultant with catastrophe settlements assuring that each estimate conformed to all applicable State, Local and National Code Requirements
- Audit Contractor, Carrier, and Policyholder estimates and material pricing in regard to each specific project and scrutinize the competency of their estimates.
- Provide Appraisal and Umpire Services.

**2004 – 2005**  **Instar Services Group - Nashville TN**
**Mr. Robison served as Project Manager / Estimator / Sales Coordinator**
- Disaster Restoration Project Manager / Estimator (Commercial Losses)
- Job Costing / Cost Engineering / Budgeting
- Provide Appraisal and Umpire Services.

**2003 – 2004**  **Full Circle Restoration - Duluth GA**
**Mr. Robison served as Project Manager / Estimator / Emergency Services Coordinator**
- Disaster Restoration Project Manager / Estimator (Residential and Commercial Losses)
- Emergency Services Coordinator (Residential and Commercial Losses)

**2000 – 2003**  **Winmark Homes - Suwanee, GA.**
**Mr. Robison served as the Senior Estimator**
- Materials Take-Offs for "ground-up" construction of new homes
- Justifying Change Order requests and Variance Purchase Orders
- Identifying misuse of materials by Sub-Contractors
- Prepare all new home "Start-Ups."
- Justifying Sub-Contractor quotes and invoices
- Directly assist Architects in the production of new product lines
- Assisted in bringing new home starts from 200 to over 600 per year.

**1997 – 2000**  **EGP & Associates Inc. - Atlanta, GA.**
**Mr. Robison served as Construction Consultant / Cost Estimator**
- Cost estimation for repairs of High-Rise Resorts / Condominiums, Retail Commercial and Industrial Facilities and Multi / Single Family Dwellings
- Compiling complete on-site damage and repair assessments and cost estimations of repairs of catastrophic structural damages.
- Directly assisted Insurance Adjusters with catastrophe settlements while assuring that each estimate conformed to all applicable State, Local and National Code Requirements
- Audit contractor estimates and material pricing in regard to each specific project and to scrutinize the competency of the contractors and their estimates.
- Provide Appraisal and Umpire Services.

**1987-1997**  **JCR Enterprises (Inc.) / Living World Landscape Company –Atlanta, GA**
**Mr. Robison served as President / Chief Operating Officer**
- Residential and Commercial Disaster Restoration and Remodeling
- Commercial Tennant Buildouts / Site lay-out
- Custom Residential Remodeling and Additions
- Residential and Commercial Landscape, Structural Hard-Scape, and Irrigation Design & Installation
- Employee and Client Relations
- Time and materials tracking and verification.
- Materials procurement
- Sub-contractor coordination
- Cost estimation

## Affiliations and Certifications:

- **1982:** Dallas Texas Sheriff's Reserve
- **1989 - 1994:** Georgia Nurseryman's Association
- **2006 - 2008:** Southern Loss Association Atlanta Georgia Member
- **2007 - 2015:** Windstorm Insurance Network Member
- **2008 - 2015:** Windstorm Insurance Network Umpire / Advanced Umpire / Appraisal Certification
- **2010:** NFIP / FEMA Flood Adjuster Certification
- **2014 - 2025:** Property Loss Appraisal Network Certified Appraiser & Umpire
- **2015:** National Association of Certified Valuators and Analysts (NACVA)-
  Expert Witness Bootcamp
- **2017 - 2023:** TWIA Umpire Register
- **2020 - 2024:** State of Louisiana Registered Appraiser
- **2022:** Henning Mediation & Arbitration Certification Program
  for State Registered Mediators & Arbitrators
- **2022 - 2025:** Georgia Supreme Court Commission on Dispute Resolution
  Registered Civil Mediator and Arbitrator. ID No.: 6609-5059-5823-2064
- **2022:** Court Room Boot Camp For Expert Witnesses
- **2023:** Windstorm Insurance Network Member ~ WIND Appraiser & Umpire Re-Certification
- **2025:** Windstorm Insurance Network Member

## Publications:

- Employee Procedure and Safety Procedure Manuals for various companies within the Construction Industry of ethical practices of sales and project management personnel.
- Author and teacher of a continuing education and certification curriculum and program for what is a nationally accepted and recognized educational program for the Appraisal and Dispute Resolution process of Insurance Appraisers and Umpires.
- Currently working on a curriculum for an Expert Witness Education Bootcamp
- As a Subject Matter Expert, Mr. Robison is currently writing a book for publication on the Appraisal Process

## Mr. Robison's Court Appointments / Expert Testimony /Depositions:

- **June 2025**
  **Cherokee County 2nd District Court, 2nd Judicial District in Cherokee County Texas**
  **Cause No.: 2025040139**
  - o Mr. Robison was Court Appointed to preside as Umpire in an Insurance Appraisal Dispute of Property Damages.

- **February 2025**
  **Circuit Court of The 12th Judicial Circuit in and for Lee County Florida**
  **Case No.: 24 CA 005557 Civil Division**
  - o Mr. Robison was Court Appointed to preside as Umpire in an Insurance Appraisal Dispute of Property Damages.

- **December 2024**
  **Circuit Court of The 12th Judicial Circuit in and for Sarasota County Florida**
  **Case No.: 2024 CA 001190 NC**
  - o Mr. Robison was Court Appointed to preside as Umpire in an Insurance Appraisal Dispute of Property Damages.

- **August 2024**
  **District Court 162nd Judicial District Dallas County Texas**
  **Case No.: DC-24-10148**
  - o Mr. Robison was Court Appointed to preside as Umpire in an Insurance Appraisal Dispute of Property Damages.

- **May 2024**
  **District Court Judicial District Tarrant County Texas**
  **Case No.: 3:22-cv-00265**
  o Mr. Robison was Court Appointed to preside as Umpire in an Insurance Appraisal Dispute of Property Damages.

- **October 2023**
  **United States District Court for The Middle District of Tennessee**
  **Case No.: 3:22-cv-00265**
  o Mr. Robison was Court Appointed to preside as Umpire in an Insurance Appraisal Dispute of Property Damages.

- **August 2023**
  **United States District Court For The Northern District Of Georgia Atlanta Division**
  **Civil Action File No.: 1:22-cv-03749-WRM**
  o Mr. Robison was engaged as a Testifying Expert Witness in an Insurance Dispute pertaining to Cost and Depreciation analyses of the structural damage to a commercial building in Dekalb County GA arising from a high wind event.

- **May 2023**
  **United States District Court, Western District of Louisiana**
  **Case No.: 2:22-cv-00735-JDC-KK**
  o Mr. Robison was engaged as Testifying Expert Witness on the procedure of the appraisal process, and the conduct and behavior of the appraisal panel.

- **April 2023**
  **United States District Court, Eastern District of North Carolina Eastern Division**
  **Case No.: 4:22-cv-00042-FL**
  o Mr. Robison was engaged as Testifying Expert Witness on the procedure of the appraisal process and the conduct and behavior of the appraisal panel.

- **May 2022**
  **United States District Court For The District of South Carolina**
  **Case No.: 6:21-cv-02678-DCC**
  o Mr. Robison was Court Appointed to preside as Umpire in an Insurance Appraisal Dispute of Property Damages.

- **September 2021**
  **United States District Court For The Northern District Of Georgia Atlanta Division**
  **Civil Action No.: 1:21-cv-00693-AT**
  o Mr. Robison was engaged as a Testifying Expert Witness in an Insurance Dispute pertaining to structural damage arising from a structural collapse of a commercial building.

- **September 2021**
  **United States District Court For The Northern District Of Georgia Atlanta Division**
  **Civil Action No.: 1:18-cv-0565-AT**
  o Mr. Robison was engaged as a Fact Witness in an Insurance Dispute pertaining to structural damages arising from under slab broken water service lines to a residential property.

- **February 2021**
  **Superior Court of Mecklenburg County Charlotte NC,**
  **File No.: 20-CvS-10734**
  o Mr. Robison was Court Appointed to preside as Umpire in an appraisal arising from a reported $400,000.00 insurance claim dispute.

- **September 2019 – December 2020**
  o Mr. Robison served as an Arbitrator on a $75,000,000.00 South Florida Commercial, Hospitality and Multi Family Property Loss Dispute arising from Hurricane Irma.

- **August 2019**
  **State Court of Dekalb County, Civil Action**
  **File No.: 18A71436**
  - Mr. Robison was retained by Defense Counsel on a as an Expert in Water Intrusion and Water Trespass and the claimed and reported ensuing damages to Plaintiffs real property.

- **August 2017**
  **Circuit Court of Cook County, Illinois:**
  **Case File No.: 17-CH-8122**
  - Mr. Robison was Court appointed as Umpire on a Million Dollar Commercial Property Appraisal Dispute.

- **June 2017**
  **Magistrate Court of Cobb County, Marietta Georgia**
  **Civil Action File No.: 17-J-03161**
  - Mr. Robison was accepted and entered into the courts by the presiding Judge as an Expert in Water Damages and Water Trespass providing Expert Testimony for the Plaintiff on a water intrusion and trespass lawsuit and the claimed and reported ensuing damages to Plaintiffs real property.

- **February 2016**
  **Magistrate Court of Cobb County, Marietta Georgia**
  **Civil Action File No.: 15-J-09849**
  - Mr. Robison provided Expert Testimony and established a pretrial mediation agreement between the Plaintiff and Defendant in a case that revolved around misrepresentation of known pre-existing damages on the Sellers Disclosure of a Real Estate transaction.

- **December 2015**
  **United States District Court For The Northern District of Georgia Atlanta Division**
  **Case No.: 1:14-CV-03906-ODE.**
  - Mr. Robison was hired as an Expert Witness in a dispute between a property owner and Restoration Contractor arising from the performance and quality of work of the contractor to the property owner's residence from a claimed insurance loss.

- **October 2015**
  **United States District Court**
  **Case No. 1:15-CV-02110-ELR**
  - Mr. Robison was hired as Expert Witness in an Insurance Dispute pertaining to structural damages arising from an Atlanta Area Tornado of 2013.

- **November 2014**
  - Mr. Robison was appointed as Umpire on a Court Ordered and Monitored pre "Bad Faith" trial Appraisal on a $2,000,000.00 commercial fire loss in Columbia South Carolina.

- **2011 - 2013**
  - Mr. Robison provided Expert Witness and Litigation Support in Million Dollar (+) "Property Owner/ Insured v Contractor and Carrier" Liability and Bad Faith litigation from the Atlanta Floods of 2009.

- **March 2011**
  **United States District Court For the Southern District of Texas, Brownsville TX**
  - Mr. Robison provided Expert Testimony and Pretrial Assistance in $1,000,000.00 Contractor / Property Owner Lawsuit

- **March 2010**
  **Superior Court of Galveston County Texas**
  - Mr. Robison provided Expert Testimony and Pretrial Assistance in $20,000,000.00 Contractor / Property Owner Lawsuit

- **December 2009**
  **Superior Court of Fulton County Georgia**
  - Mr. Robison was Court appointed as Umpire in a $250,000.00 Residential Appraisal

- **July 2009**
  - Mr. Robison Provided Expert Witness and Litigation Support on Million Dollar (+) Appraisal from Hurricane Ike.

- **December  2008**
  - Mr. Robison Assisted on a Mississippi Government Facility with roofing repair issues. Mr. Robison's participation in this matter was to comprise a list of deficiencies and re construction defects as directed by the Prime Contractor against the Subcontractor, create an outline of interrogatories, deposition questions and participate as an umpire between the Prime Contractor, Subcontractor and the Prevailing Jurisdiction prior to mediation and or Court Proceedings.

- **August  2008**
  - Mr. Robison Assisted Subcontractors in Louisiana who had performed work for a General Contractor and had not been compensated per their contract. Mr. Robison's participation in this matter was to comprise a list of deficiencies and re construction defects as directed by the General Contractor against the Subcontractor, Mr. Robison further created an outline of interrogatories, deposition questions and participated as an umpire between the General Contractor and Subcontractor prior to mediation and Court Proceedings.

- **June 2007 – October 2012**
  - Mr. Robison was involved in the assistance of several Subcontractors in a Lawsuit against a New Orleans General Contractor for nonpayment of work performed as a result of Hurricane Katrina.

- **April 2007**
  - Deposition given regarding damage assessment to property located in Terry Town, LA. Mr. Robison provided testimony disputing the claims of the Contractor, Architect and Engineer regarding the actual damages and costs of repairs.

- **January  2007**
  - Pre-Trial Consultant for case involving Homeowners Association dispute against home construction regarding retaining walls and drainage issues and pricing comparisons between 2004 construction costs and 2007 construction costs.

**<u>Major National Catastrophic Events Worked by Mr. Robison</u>**
**Along with numerous other structure fires, tropical storms, tornados, floods, and hail events across the continental United States, and its Territories including Puerto Rico and the US Virgin Islands, Mr. Robison has worked the following major catastrophic events.**

| | | |
|---|---|---|
| **Hurricane Floyd** | **Ringgold GA, Tornado** | **Hurricane Laura** |
| **Hurricane Charlie** | **Hurricane Sandy** | **Hurricane Sally** |
| **Hurricane Jeanne** | **Moore Oklahoma, Tornado** | **Hurricane Zeta** |
| **Hurricane Ivan** | **Hurricane Harvey** | **Nashville Bombing** |
| **Hurricane Wilma** | **Hurricane Irma** | **Newnan GA Tornado** |
| **Hurricane Katrina** | **Hurricane Maria** | **Hurricane Ida** |
| **Hurricane Dolly** | **Hurricane Michael** | **Hurricane  Ian** |
| **Hurricane Ike** | **Dayton Ohio Tornados** | **Hurricane Helene** |
| **Hurricane Irene** | **Hurricane Dorian** | **Hurricane Milton** |
| **Atlanta Floods** | **The Midwest Derecho** | **Hurricane Debby** |
| **Atlanta City, Tornado** | **Nashville TN Tornado** | **Hurricane Francine** |
| **Nashville Flood** | | **Hurricane Beryl** |

**<u>REMAINDER OF PAGE INTENTIONALLY LEFT BLANK</u>**

**Types Of Buildings, Structures, And Facilities in Which Mr. Robison Has Loss Dispute Experience.**

| | | |
|---|---|---|
| **Airport Terminals & Hangars** | **Gas Stations** | **Plastic Manufacturing Plants** |
| **Amusement Parks** | **Golf Courses** | **Pre-Engineered Buildings** |
| **Apartment Complexes** | **Grocery Stores** | **Printing Companies** |
| **Auditoriums** | **Government Buildings** | **Propagation Facilities** |
| **Auto Dealerships** | **Historical Buildings** | **(Horticultural Facilities)** |
| **Banks** | **High Rise Office Buildings** | **Race Tracks** |
| **Building Material Suppliers** | **Hospitals / Medical Facilities** | **Recording Studios** |
| **Carpet Mills** | **Hotels** | **Recycling Plants** |
| **Casinos** | **Industrial Facilities** | **Research Facilities** |
| **Chemical Plants** | **Jewelry Stores** | **Residential** |
| **Churches** | **Law Enforcement Facilities** | **(Single And Multi-Family)** |
| **Condominiums** | **Libraries** | **Resorts** |
| **Convention Centers** | **Malls** | **Restaurants / Night Clubs** |
| **Country Clubs** | **Manufacturing Facilities** | **Retail Facilities** |
| **Courthouses** | **Marinas / Docks** | **Retirement Homes** |
| **Data Processing Centers** | **Marijuana Dispensaries** | **Shipping Ports** |
| **Distribution Facilities** | **(Testing / Propagation Facilities)** | **Shopping Centers** |
| **Educational Facilities** | **Metal Buildings** | **Townhomes** |
| **Farms / Ranches / Grain Silos** | **Nursing Homes** | **TV / Radio Stations** |
| **(livestock / Timber/ Crops)** | **Nursery / Landscape Facilities** | **Warehouses** |
| **Fertilizer Plants** | **Office Parks** | **(Shipping / Fulfillment Facilities)** |
| **Food Processing Plants** | **Paper Mills** | |

During Hurricane's Katrina and Ike, Mr. Robison and The CSI Group provided Loss Consulting Services on numerous Municipalities and School Districts including but not limited to Calcasieu Parrish, The Lake Charles Municipal Airport and Historic Court House, the Port Arthur Independent School District, and the Memorial Hospital at Gulfport.

**Education:**     **1979 – 1981   Harper College, Palatine IL**,

- Business Management /Business Law / Spanish / Construction Management / Forensic Science

**Additional Qualifications and Achievements:**

- Fluent in Spanish

- Mr. Robison is a Christian Faith Based Ordained Minister able to perform Marriages and Funerals.

- John is Happily Married to his Bride Cathy of 33 years and has two sons John and James that have both Graduated College.

**REMAINDER OF PAGE INTENTIONALLY LEFT BLANK**

**Speaking Engagements**

- Mr. Robison presented "Cutting The Infamous Green Wire" ~ defusing the weaponization of appraisal at the 2024 Texas Association of Public Adjusters (TAPIA) Fall Conference San Antonio TX

- Mr. Robison was guest speaker and panel member for "When is Damage Not Damage" hosted by Law offices of Thomas W. Hamrick Dallas TX

- Mr. Robison was co-presenter at the Irwin & Associates Claims Training Symposium on Business Interruption in the Appraisal Process held in Slidell Louisiana.

- Mr. Robison was a guest speaker and panel member on the Appraisal Process at the Level Up Claims Summit held in New Orleans, Louisiana.

- Mr. Robison has achieved the status of Registered Civil Mediator & Arbitrator for the State of Georgia and is now working to achieve the same registration in both Florida and Tennessee.

- Mr. Robison was a guest speaker on Appraisals at the 2018 NACA (National Association of Catastrophe Adjusters) Conference in Las Vegas, and again for the 2019 NACA conference providing an 8-hour Appraisal Education & Certification course for over 100 Insurance Adjusters.

- Mr. Robison is an accredited CE Provider for the education and certification of Appraisers and Umpires Through both the Alabama, Arizona, Arkansas, Colorado, Florida, Georgia, Illinois, Indiana, Iowa, Kentucky, Louisiana, Mississippi, Nevada, North Carolina, Oklahoma, Pennsylvania, Tennessee, Texas, Utah and Virginia Departments Of Insurance and is currently completing the requirements to achieve Instructor / Provider Status for (CE) Continuing Education programs in all states requiring CE Credits for Adjusters, Public Adjusters, Insurance Agents and Various other Industry Professional Designations.

- Mr. Robison Founded and launched the National Education and Certification Programs through his founded Organization The Property Loss Appraisal Network ~ P.L.A.N.
  "The Do's and Don'ts of The Property Loss Appraisal Process" ~ Property Loss Appraiser Certification
  "Sharpen The Pencil & Not The Sword" ~ Property Loss Umpire Certification.

**References and Additional Information for Mr. Robison:**

- Additional professional employment experience, current and past certifications and references available upon request. Should you require further information concerning the credentials of Mr. Robison, please feel free to contact him at any time.

**REMAINDER OF PAGE INTENTIONALLY LEFT BLANK**



# CANON OF ETHICS FOR

# P.L.A.N. CERTIFIED APPRAISERS

# Educational Objective:

Appraisal is a process found in almost all insurance policies and is commonly used in property damage situations. The language will usually state that appraisal is mandatory when properly demanded by the insurer or insured. When properly executed, appraisal is binding on the parties as to the amount of loss only. However, quite often the appraisal process is improperly invoked, employed, and/or conducted. Appraisals are often conducted without the involvement attorneys, and are usually implemented just between the insurer, the insured, and their respective adjusters.

The Courses are broken into 2 segments where the participants can attend a three day or the full five-day program. The Courses are designed and focused on teaching and strengthening the morals, ethics, integrity, and professionalism to those who serve as Property Loss Appraisers and Property Loss Umpires and implement the Property Loss Appraisal Process as a whole.

The Courses focus on providing an understanding of the Property Loss Appraisal Process by first gaining an understanding of the participants' experience in appraisals, their understanding of the process and its intended usage in insurance disputes.

**"The Do's and Don'ts of the Appraisal Process" P.L.A.N. Appraiser Certification:**
Educates P.L.A.N. Certified Appraisers to become successful in their role as a Property Loss Appraiser by eliminating the common mistakes and pitfalls commonly found and exercised in the process.

**"Sharpen The Pencil & Not The Sword" P.L.A.N. Umpire Certification:**
Takes P.L.A.N. Certified Umpires through a detailed explanation of the role, duties, and authorities of the Property Loss Appraisal Umpire and the process and concludes with the art and practice of taking part in an actual appraisal as the Umpire.

During the three-day and five-day segments, Special Guest Speakers will be sharing their wealth of knowledge and experience in the Appraisal Process discussing current trends, events, ever changing rules and regulations, case laws, and will provide a Q & A session on procedural protocols that effect the process.

CE Credits are available through this course and are provided in 8 to 24 credit hours depending upon the participants chosen attendance of the course segments.

Upon completion of the course(s), participants with passing exam scores, will receive a certificate of completion along with a designation of P.L.A.N. Certified Property Loss Appraiser (CPLA), or P.L.A.N. Certified Property Loss Umpire (CPLU) or a dual P.L.A.N. Certified Property Loss Appraiser & Umpire (CPLAU). Attendees will receive both a printed and electronic copy of the seminar reference materials. Upon Completion of the courses attendees are eligible for a paid access to our one-year P.L.A.N. Membership, Members only Blog and a one year paid listing in the **P.L.A.N.** Appraiser or Umpire Registry depending on their designation achieved.

P.L.A.N. Copyright © 2014-2023

The Property Loss Appraisal Network P.L.A.N.
Headquarters: 151 W. Main Street, Suite 103, Canton GA 30114
1-844-344-PLAN (7526) / www.theplanonline.org / info@theplanonline.org




# Canon of Ethics for P.L.A.N. Certified Appraisers

P.L.A.N. understands the need for establishing a standard of ethical behavior for the certified umpires within their program. The following is a Canon of Ethics for those who perform as an Appraiser under the P.L.A.N. Certified Property Loss Appraiser (CPLA) Program.

Any person that acts or performs in the role and duties of a P.L.A.N. Certified Property Loss Appraiser (CPLA) does so with the responsibility of performing these services and conducting themselves in a manner that will uphold the integrity, trust, and fairness inherent of the process and their appointment to serve in the capacity of a Property Loss Appraiser.

1.  P.L.A.N. Certified Property Loss Appraisers (CPLA) swear to hold themselves to the highest level of standards, both ethically and professionally while performing the duties of an Appraiser. These standards of ethics should be the same as those who hold themselves out as serving in a position with Public Trust or Protection.

2.  While performing the duties of an Appraiser, P.L.A.N. Certified Property Loss Appraisers (CPLA) shall not knowingly engage themselves in practices which may adversely discredit P.L.A.N., the appraisal process or their profession and the profession of others.

3.  P.L.A.N. Certified Property Loss Appraisers (CPLA) shall hold no financial interest in a specific appraisal other than their agreed to and Reasonable Standard and Customary Fees.

4.  P.L.A.N. Certified Property Loss Appraisers (CPLA) are prohibited from charging percentages or fees contingent upon the outcome of their services, except for and only in States, Jurisdictions or Provinces that allow Contingent Appraisal Fees per Governing Law or Statute.

5.  P.L.A.N. Certified Property Loss Appraisers (CPLA) should never accept any financial arrangement which could be contradictory to any and all applicable laws and statutes within the process or governing jurisdictions.

6.  P.L.A.N. Certified Property Loss Appraisers (CPLA) will disclose their fee schedules, retainer requirements, and or payment arrangements along with other potential financial exposures prior to accepting the position of Appraiser.

7.  P.L.A.N. Certified Property Loss Appraisers (CPLA) shall not undertake any appraisal in which they are not competent, impartial, or knowledgeable.

8. P.L.A.N. Certified Property Loss Appraisers (CPLA) shall conduct all communications and the sharing of any information in a Non-Ex Parte manner on all appraisals to which he or she presides.

9. P.L.A.N. Certified Property Loss Appraisers (CPLA) shall not be influenced by outside parties through either intimidation, wrongful personal financial gain malice or harassment.

10. P.L.A.N. Certified Property Loss Appraisers (CPLA) shall not maliciously and knowingly act in any manner to cause injury or discredit the reputation of their colleagues, their profession, or the Appraisal Process in whole.

11. Under any circumstances, should a P.L.A.N. Certified Property Loss Appraiser (CPLA) need to remove themselves from an appointment of appraisal, they will do so in a professional manner which does not and cannot harm the process or the disputants.

12. P.L.A.N. Certified Property Loss Appraisers (CPLA) agree to perform their duties following and under the guidelines of the Governing Laws in the state in which the loss resides and those of the insurance policy languages which govern the specific loss under Appraisal.

13. P.L.A.N. Certified Property Loss Appraisers (CPLA) shall act in a manner of expedience, due diligence, and fairness in the performance of their duties in the appraisal process.

14. P.L.A.N. Certified Property Loss Appraisers (CPLA) understand the need to abide by the highest standards of ethics and professionalism for both the industry and the network to which they are members and swear to uphold these standards and demand it of others within their appointments as Appraiser.

15. P.L.A.N. Certified Property Loss Appraisers (CPLA) swear to uphold the inherent trust in their work and behavior and stand behind their decisions without the fear and propensity of outside influences.

16. P.L.A.N. Certified Property Loss Appraisers (CPLA) are not and cannot act serve or perform as advocates for the party they represent in appraisal.

17. P.L.A.N. Certified Property Loss Appraisers (CPLA) must command the Authority to make all award decisions without consulting the party they represent.

18. P.L.A.N. Certified Property Loss Appraisers (CPLA) swear to uphold the confidentiality of the Appraisal Process and will never disclose confidential information for personal gain of any kind on any appraisal for which they provide services to the private or public sectors and promise to discuss and use only information relevant to the loss within their appointments.

19. The Appraisal process requires working with many professionals, both in the public and private sectors. P.L.A.N. Certified Property Loss Appraisers (CPLA) swear to conduct themselves with the highest standard of ethics, professionalism, and integrity while performing their duties and representing themselves as P.L.A.N. Certified Property Loss Appraisers (CPLA).

20.  P.L.A.N. Certified Property Loss Appraisers (CPLA) swear to take pride in the position of Appraiser, and to perform their duties without knowingly jeopardizing either side of the panel, no matter how tedious the task.

21.  P.L.A.N. Certified Property Loss Appraisers (CPLA) hold themselves responsible for keeping up to date on all applicable Laws, Certifications, Training Programs and Licensing requirements for the performance of their duties.

22.  P.L.A.N. Certified Property Loss Appraisers (CPLA) should avoid all improprieties in communicating with the Umpire by performing all communications in a "Non-Ex Parte" manner.

23.  P.L.A.N. Certified Property Loss Appraisers (CPLA) understand that their actions affect the lives and businesses of the people they serve, on every claim, and swear to have respect for that power and conduct themselves in a manner that will not intentionally harm those whom they serve.

24.  Advertisements by P.L.A.N. Certified Property Loss Appraisers (CPLA) must be done in a manner of truthfulness and should not promote or imply any services beyond their capabilities or those which go against any governing laws of the process or authoritative jurisdictions.

25.  P.L.A.N. Certified Property Loss Appraisers (CPLA) swear to perform their duties without bias or prejudice and uphold the ethical standards, behavior, and authority within their position and will not jeopardize themselves or the proceedings for personal financial gain or intentional harm to others.

26.  P.L.A.N. Certified Appraisers (CPLA) should only accept their appointment if:

    a.  They are physically able to perform their duties.

    b.  They are competent in the areas under appraisal.

    c.  They can devote the time and attention to complete the appraisal process expeditiously

    d.  They can perform their duties without outside influence.

    e.  They can perform their duties without bias.

    f.  They understand the governing laws and policies applicable to the specific appraisal.

    g.  They have no personal or financial interest in the Appraisal other than their standard, customary, and reasonable fees.

P.L.A.N. Canon of Ethics Copyright © 2014-2023



# CANON OF ETHICS FOR

# P.L.A.N. CERTIFIED UMPIRES

The Property Loss Appraisal Network P.L.A.N.
Headquarters: 151 W. Main Street, Suite 103, Canton GA 30114
1-844-344-PLAN (7526) / www.theplanonline.org / info@theplanonline.org

**Exhibit III**

# Educational Objective:

Appraisal is a process found in almost all insurance policies and is commonly used in property damage situations. The language will usually state that appraisal is mandatory when properly demanded by the insurer or insured. When properly executed, appraisal is binding on the parties as to the amount of loss only. However, quite often the appraisal process is improperly invoked, employed, and/or conducted. Appraisals are often conducted without the involvement attorneys, and are usually implemented just between the insurer, the insured, and their respective adjusters.

The Courses are broken into 2 segments where the participants can attend a three day or the full five-day program. The Courses are designed and focused on teaching and strengthening the morals, ethics, integrity, and professionalism to those who serve as Property Loss Appraisers and Property Loss Umpires and implement the Property Loss Appraisal Process as a whole.

The Courses focus on providing an understanding of the Property Loss Appraisal Process by first gaining an understanding of the participants' experience in appraisals, their understanding of the process and its intended usage in insurance disputes.

**"The Do's and Don'ts of the Appraisal Process" P.L.A.N. Appraiser Certification:**
Educates P.L.A.N. Certified Appraisers to become successful in their role as a Property Loss Appraiser by eliminating the common mistakes and pitfalls commonly found and exercised in the process.

**"Sharpen The Pencil & Not The Sword" P.L.A.N. Umpire Certification:**
Takes P.L.A.N. Certified Umpires through a detailed explanation of the role, duties, and authorities of the Property Loss Appraisal Umpire and the process and concludes with the art and practice of taking part in an actual appraisal as the Umpire.

During the three-day and five-day segments, Special Guest Speakers will be sharing their wealth of knowledge and experience in the Appraisal Process discussing current trends, events, ever changing rules and regulations, case laws, and will provide a Q & A session on procedural protocols that effect the process.

CE Credits are available through this course and are provided in 8 to 24 credit hours depending upon the participants chosen attendance of the course segments.

Upon completion of the course(s), participants with passing exam scores, will receive a certificate of completion along with a designation of P.L.A.N. Certified Property Loss Appraiser (CPLA), or P.L.A.N. Certified Property Loss Umpire (CPLU) or a dual P.L.A.N. Certified Property Loss Appraiser & Umpire (CPLAU). Attendees will receive both a printed and electronic copy of the seminar reference materials. Upon Completion of the courses attendees are eligible for a paid access to our one-year P.L.A.N. Membership, Members only Blog and a one year paid listing in the **P.L.A.N.** Appraiser or Umpire Registry depending on their designation achieved.

P.L.A.N. Copyright © 2014-2023

The Property Loss Appraisal Network P.L.A.N.
Headquarters: 151 W. Main Street, Suite 103, Canton GA 30114
1-844-344-PLAN (7526) / www.theplanonline.org / info@theplanonline.org




# Canon of Ethics for P.L.A.N. Certified Umpires

P.L.A.N. understands the need for establishing a standard of ethical behavior for the certified umpires within their program. The following is a Canon of Ethics for those who perform as an Umpire under the P.L.A.N. Certified Umpire (CPLU) Program.

Any person that acts or performs in the role and duties of a P.L.A.N. Certified Umpire (CPLU) does so with the responsibility of performing these services and conducting themselves in a manner that will uphold the integrity, trust, and fairness inherent of the process and their appointment to serve in the capacity of Umpire.

1.  P.L.A.N. Certified Property Loss Umpires (CPLU) swear to hold themselves to the highest level of standards, both ethically and professionally while performing the duties of an Umpire. These standards of ethics should be the same as those who hold themselves out as serving in a position with public trust or protection.

2.  While performing the duties of an Umpire, P.L.A.N. Certified Property Loss Umpires (CPLU) shall not knowingly engage themselves in practices which may adversely discredit P.L.A.N., the appraisal process or their profession.

3.  P.L.A.N. Certified Property Loss Umpires (CPLU) shall not undertake any appraisal in which they are not competent, impartial, or knowledgeable.

4.  Prior to the acceptance of the Umpire to preside over an appraisal, P.L.A.N. Certified Property Loss Umpires (CPLU) must disclose any relationships, both professional and personal, between all parties involved in the specific appraisal.

5.  P.L.A.N. Certified Property Loss Umpires (CPLU) shall hold no financial interest in a specific appraisal other than his agreed to standard and customary fees.

6.  P.L.A.N. Certified Property Loss Umpires (CPLU) should never accept any financial arrangement which could be contradictory to any and all applicable laws and statutes within the process or governing jurisdictions.

7.  P.L.A.N. Certified Property Loss Umpires (CPLU) should conduct all communications and the sharing of any information in a Non-Ex Parte manner on all appraisals to which he or she presides.

8.  P.L.A.N. Certified Property Loss Umpires (CPLU) are required to inspect the physical loss and are to perform due diligence in obtaining an award without merely "Splitting the Baby."

9.  P.L.A.N. Certified Property Loss Umpires (CPLU) will disclose their fee schedules, retainer requirements, and or payment arrangements prior to accepting the position of Umpire.

10. P.L.A.N. Certified Property Loss Umpires (CPLU) shall command the respect and authority of their position in obtaining a fair, just, and unbiased resolution to the appraisal.

11. P.L.A.N. Certified Property Loss Umpires (CPLU) shall not maliciously and knowingly act in any manner to cause injury or discredit the reputation of their colleagues, their profession or the Appraisal Process in whole.

12. P.L.A.N. Certified Property Loss Umpires (CPLU) agree to perform their duties following and under the guidelines of the Governing Laws in the state in which the loss resides and those of the insurance policy languages which govern the specific loss under Appraisal.

13. P.L.A.N. Certified Property Loss Umpires (CPLU) shall act in a manner of expedience, due diligence, and fairness in the performance of their duties in the appraisal process.

14. Under any circumstances, should a P.L.A.N. Certified Property Loss Appraiser need to remove themselves from an appointment of appraisal, they will do so in a professional manner which does not and cannot harm the process or the disputants.

15. P.L.A.N. Certified Property Loss Umpires (CPLU) understand the need to abide by the highest standards of ethics and professionalism for both the industry and the network to which they are members and swear to uphold these standards and demand it of others within their appointments as Umpire.

16. P.L.A.N. Certified Property Loss Umpires (CPLU) swear to uphold the inherent trust in their work and behavior and stand behind their decisions without the fear and propensity of outside influences.

17. P.L.A.N. Certified Property Loss Appraisers are not and cannot act serve or perform as advocates for either party of the appraisal and cannot act serve or perform as a third appraiser and must maintain a position of neutrality throughout the process.

18. Advertisements by P.L.A.N. Certified Property Loss Appraisers must be done in a manner of truthfulness and should not promote or imply any services beyond their capabilities or those which go against any governing laws of the process or authoritative jurisdictions.

19. P.L.A.N. Certified Property Loss Umpires (CPLU) swear to uphold the confidentiality of the Appraisal Process and will never disclose confidential information for personal gain of any kind on any appraisal for which they provide services to the private or public sectors and promise to discuss and use only information relevant to the loss within their appointments.

20.    The Appraisal process requires working with many professionals, both in the public and private sectors, accordingly, P.L.A.N. Certified Property Loss Umpires (CPLU) swear to conduct themselves with the highest standard of ethics, professionalism, and integrity while performing their duties and representing themselves as P.L.A.N. Certified Property Loss Umpires (CPLU)

21.    P.L.A.N. Certified Property Loss Umpires (CPLU) swear to take pride in the position of Umpire, and to perform their duties without knowingly jeopardizing either side of the panel, no matter how tedious the task.

22.    P.L.A.N. Certified Property Loss Umpires (CPLU) hold themselves responsible for keeping up to date on all applicable Laws, Certifications, Training Programs and Licensing requirements for the performance of their duties.

23.    P.L.A.N. Certified Property Loss Umpires (CPLU) understand that their actions affect the lives and businesses of the people they serve, on every claim, and swear to have respect for that power and conduct themselves in a manner that will not intentionally harm those whom they serve.

24.    P.L.A.N. Certified Property Loss Umpires (CPLU) swear to perform their duties without bias or prejudice and uphold the ethical standards, behavior, and authority within their position and will not jeopardize themselves or the proceedings for personal financial gain or intentional harm to others.

25.    P.L.A.N. Certified Umpires (CPLU) should only accept their appointment if:

a.    They are physically able to perform their duties.

b.    They are competent in the areas under appraisal.

c.    They can devote the time and attention to complete the appraisal process expeditiously.

d.    They can perform their duties without outside influence.

e.    They can perform their duties without bias.

f.    They understand the governing laws and policies applicable to the specific appraisal.

g.    They have no personal or financial interest in the Appraisal other than their standard, customary, and reasonable fees.

P.L.A.N. Canon of Ethics Copyright © 2014-2023



Join IAUA

- [Home](#)
- [About Us](#)
- [Our Board](#)
- [Membership](#)
- [CERTIFICATIONS](#)
- [Directory](#)
- [Events](#)



Code of Ethics

Conducting Appraisal to resolve disputes in insurance claims engages the public trust. Appraisers and Umpires shall put the duty for fair and honest conduct of the Appraisal Process above the Appraiser's or Umpire's own interests in every instance. The following standards of conduct define the ethical behavior, and shall constitute a code of ethics that shall be binding on all members of the Insurance Appraisal and Umpire Association:

I. Members of the Insurance Appraisal and Umpire Association shall not engage in practices which may discredit the IAUA or the Appraisal process as a fair, expedient and cost effective Alternate Dispute Resolution method.

II. Appraisers and Umpires shall conduct themselves with the highest of ethical standards in their dealings with policyholders, the insurance companies, the public, Appraisers, Umpires, claim professionals, and experts.

**Exhibit IV**

III. Appraisers and Umpires shall remain current on the laws and regulations affecting their professional responsibilities by attending such classes, seminars and training as necessary.

IV. An Appraiser or Umpire shall not undertake any Appraisal concerning matters with which they are not currently competent and knowledgeable, or which otherwise exceeds their current expertise; Appraisers and Umpires must be competent for the particular matter.

V. Appraisers and Umpires shall conduct themselves in such a manner as to command respect and confidence and shall approach Appraisals with an unprejudiced and open mind, while advocating for their client as legally appropriate.

VI. Appraisers and Umpires shall not injure the reputation or professional practice of colleagues.

VII. Appraisers and Umpires shall not approach Appraisals in a manner prejudicial to the policyholder or insurance company.

VIII. Appraisers and Umpires shall handle every Appraisal with honesty and integrity, and allow a fair Appraisal to all parties without any compensation or remuneration to himself or herself except that to which he or she is legally entitled.

IX. Appraisers and Umpires, upon undertaking an Appraisal, shall act with dispatch and due diligence in achieving a proper disposition of the Appraisal.

-

- Home
- About Us
- Our Board
- Membership
- CERTIFICATIONS
- Directory
- Events

© 2016-2022 INSURANCE APPRAISAL AND UMPIRE ASSOCIATION, INC.
Insurance Appraisal And Umpire Association, Inc. is a non-profit organization.



- 804-905-WIND (9463)
- MEMBER LOGIN
- BECOME A MEMBER

- Home
- About
  - 
    - 
      - 
      - 
    - 
    - 
    - 
- Membership
  - 
- Certified Professionals
  - 
    - 
    - 
  - 
    - 
    - 
    - 
  - 
- Events
  - 
  - 
- Windstorm News
- Contact Us

**Exhibit V**

**Certified Professionals**
**Ethical Rules for Umpires in Insurance Appraisals**

*These ethical rules shall be effective as of January 2020.*

The Windstorm Insurance Network having committed to upholding the highest ethical standards for professionals in the insurance industry, hereby adopts the following ethical rules for umpires who have completed the Wind Umpire Certification course and who actively engage in the appraisal process as an umpire.

**An Umpire shall:**

1.  Be a neutral party.
2.  Have no financial interest in any involved property or in the outcome of the appraisal.
3.  Disclose any previous business relationship with any party, appraiser or attorney retained by a party.
4.  Promptly disclose any potential conflict of interest before accepting an assignment as an umpire, and notify the parties immediately if a conflict or potential conflict arises during the course of the appraisal proceedings.
5.  Not accept any assignment that he or she is not certain he or she is qualified to handle.
6.  Confirm any fee arrangement with the parties in writing.
7.  Confirm the issues to be addressed in the appraisal in writing with the parties.
8.  Agree to inspect the property if requested to do so by either appraiser.
9.  Maintain impartiality and neutrality throughout the appraisal process and uphold the integrity of the proceedings.
10. Share all communications with all members of the appraisal panel throughout the appraisal proceedings.
11. Be responsible to proceed diligently to conclude the appraisal proceedings.
12. Retain only unbiased, qualified and impartial experts.
13. Inquire of any retained expert as to any potential conflict of the expert.
14. Evaluate completely all presented facts and/or claims.
15. To the best of his or her ability, follow the law of the jurisdiction of the property.
16. Withdraw from the proceedings if a conflict arises and the conflict is not waived in writing by all parties after notice to the parties of the conflict.
17. Not withhold signature on any appraisal award until payment for services is received.
18. Maintain records in good order during the appraisal process in accordance with any applicable rules or guidelines for preservation once the matter is concluded.
19. Keep true and accurate records of time, expense and fee billings.
20. Keep an updated list of all properties and parties for which he or she served as an umpire for a period of seven (7) years.
21. Maintain and keep current all applicable professional licenses and continuing education requirements.
22. Be truthful and accurate in all marketing or advertising activities.



Windstorm Insurance Network (WIND) is a professional member association and annual conference founded in 1999 to offer education and industry insight for the property/windstorm insurance claims industry.

**Connect**

**Windstorm Insurance Network (WIND)**
2800 Eisenhower Avenue, Suite 210
Alexandria, VA 22314

804-905-WIND (9463)
admin@windnetwork.com



- 804-905-WIND (9463)
- MEMBER LOGIN
- BECOME A MEMBER

- Home
- About
  - 
    - 
      - 
      - 
  - 
  - 
  - 
- Membership
  - 
- Certified Professionals
  - 
    - 
    - 
  - 
    - 
    - 
    - 
  - 
- Events
  - 
  - 
- Windstorm News
- Contact Us

Exhibit VI

**Certified Professionals**
**Ethical Rules for Umpires in Insurance Appraisals**

*These ethical rules shall be effective as of January 2020.*

The Windstorm Insurance Network having committed to upholding the highest ethical standards for professionals in the insurance industry, hereby adopts the following ethical rules for umpires who have completed the Wind Umpire Certification course and who actively engage in the appraisal process as an umpire.

**An Umpire shall:**

1. Be a neutral party.
2. Have no financial interest in any involved property or in the outcome of the appraisal.
3. Disclose any previous business relationship with any party, appraiser or attorney retained by a party.
4. Promptly disclose any potential conflict of interest before accepting an assignment as an umpire, and notify the parties immediately if a conflict or potential conflict arises during the course of the appraisal proceedings.
5. Not accept any assignment that he or she is not certain he or she is qualified to handle.
6. Confirm any fee arrangement with the parties in writing.
7. Confirm the issues to be addressed in the appraisal in writing with the parties.
8. Agree to inspect the property if requested to do so by either appraiser.
9. Maintain impartiality and neutrality throughout the appraisal process and uphold the integrity of the proceedings.
10. Share all communications with all members of the appraisal panel throughout the appraisal proceedings.
11. Be responsible to proceed diligently to conclude the appraisal proceedings.
12. Retain only unbiased, qualified and impartial experts.
13. Inquire of any retained expert as to any potential conflict of the expert.
14. Evaluate completely all presented facts and/or claims.
15. To the best of his or her ability, follow the law of the jurisdiction of the property.
16. Withdraw from the proceedings if a conflict arises and the conflict is not waived in writing by all parties after notice to the parties of the conflict.
17. Not withhold signature on any appraisal award until payment for services is received.
18. Maintain records in good order during the appraisal process in accordance with any applicable rules or guidelines for preservation once the matter is concluded.
19. Keep true and accurate records of time, expense and fee billings.
20. Keep an updated list of all properties and parties for which he or she served as an umpire for a period of seven (7) years.
21. Maintain and keep current all applicable professional licenses and continuing education requirements.
22. Be truthful and accurate in all marketing or advertising activities.



Windstorm Insurance Network (WIND) is a professional member association and annual conference founded in 1999 to offer education and industry insight for the property/windstorm insurance claims industry.

**Connect**

**Windstorm Insurance Network (WIND)**
2800 Eisenhower Avenue, Suite 210
Alexandria, VA 22314

804-905-WIND (9463)
admin@windnetwork.com